**George E. VIVEROS, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 4214.**

Supreme Court of Alaska.

Feb. 21, 1980.

Phillip P. Weidner, Drathman, Weidner & Bryson, Anchorage, for appellant.

Leonard M. Linton, Jr., Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

OPINION

BOOCHEVER, Justice.

George E. Viveros was indicted for armed robbery in violation of AS 11.15.240 and AS 11.15.295. After trial, the jury returned a verdict of guilty. The trial judge sentenced Viveros to fifteen years' imprisonment, and Viveros filed this appeal.

Viveros raises issues as to pre-trial identification procedures, his in-court identification, the validity of a disjunctive instruction requiring the jury to determine whether he stole by force and violence or by putting the victim in fear with a handgun, and the failure to give a lesser included offense instruction. We affirm the conviction for robbery in violation of AS 11.15.240 but reverse as to the conviction for use of a firearm in violation of AS 11.15.295.

The relevant facts are as follows. Mrs. Joyce Johnson worked as a cashier at a Safeway Liquor Store at Ninth and Gambell in Anchorage. On November 7, 1977, just before 6:00 p. m., a man walked into the liquor store, put a dollar on the counter, and told Mrs. Johnson to "put the money in the bag." Mrs. Johnson failed to understand that she was being robbed. The man then raised his jacket to reveal what Mrs. Johnson described as the butt of a handgun. The man did not produce a weapon.

Mrs. Johnson placed the money from the cash register in a brown paper bag. The man told her to go to the back of the room. When she turned around he had fled.

After the robbery, Mrs. Johnson described the robber to Officer Coffey of the Anchorage Police as a Spanish or Mexican white male with long, unkempt hair. He had no hat or gloves, did not wear glasses and had a dark brown or green coat. He was unshaven but had no beard or mustache.

Mrs. Johnson testified at trial that she had seen the same man about seven days prior to the robbery at Fred Meyer's, an Anchorage discount store. According to her testimony, Mrs. Johnson and her daughter, Carla, had been standing behind the man at Fred Meyer's for approximately ten minutes while the cashier had another clerk show her how to ring up a $600.00 purchase of a microwave oven. Mrs. Johnson stated that she recognized the robber when he came into the liquor store as the same man who had been purchasing the oven "because of his face."

Near the time of the robbery, a picture of Viveros had been circulating within the Anchorage Police Department in connection with another matter. Officer Coffey had seen the picture, and based upon Mrs. Johnson's description, he suggested Viveros as a possible suspect to Officer Jansen, the chief investigating officer. Officer Jansen assembled four other photographs from the burglary suppression unit.

Jansen went to the Johnson residence three days after the robbery with the five photographs. On his first visit Mrs. Johnson was not present, so Jansen showed the photographs to Carla. Carla picked out the picture of Viveros as the man she and her mother had seen at Fred Meyer's. Jansen returned approximately one hour later and showed the same photographs to Mrs. Johnson, who also picked out the photograph of Viveros as the man she had seen at Fred Meyer's and the man who had later robbed her at the liquor store.

Before Officer Jansen had returned to show the pictures to Mrs. Johnson, Carla told her mother that the man they had seen at Fred Meyer's was included among the group of photographs she saw. However, Mrs. Johnson was not sure she would be shown the same group of pictures. Mrs. Johnson assumed she was looking at armed robbery suspects, although it does not appear that Officer Jansen told her so.

## I. IDENTIFICATION OF VIVEROS

At trial, the prosecutor first introduced testimony of Mrs. Johnson relating to her pre-trial identification of Viveros. Mrs. Johnson subsequently made an in-court identification of Viveros. As to the pre-trial identification, Viveros argues that the procedure used by the police in obtaining Mrs. Johnson's identification was "totally

unnecessary and extremely suggestive." He urges the Alaska Supreme Court to adopt a "per se" test for the exclusion of evidence relating to pre-trial identifications. The essence of this strict exclusionary rule would be that unnecessarily suggestive pre-trial identifications would be suppressed regardless of reliability. The purpose would be to deter the police from using such techniques.

As to the in-court identification, Viveros argues that it is "not free from the taint of the unconstitutional pre-trial identification."

### A. The Pre-Trial Identification

 Viveros argues that the photographic lineup was unduly suggestive for a number of reasons. First, he claims that he was the only person of Spanish or Mexican descent among the five photographs assembled by the police. When Mrs. Johnson and her daughter examined the photographs, they were looking for someone that was "Spanish looking." Consequently, in his view, the photographic lineup was unduly suggestive because it failed to include other persons with a Spanish or Mexican appearance.

Second, Viveros argues that his photograph stood out among the other five because it was darker than the rest and it had a white line running diagonally across it. He implies that the darker photograph would emphasize the defendant's dark complexion and unshaven appearance.

Third, Viveros argues that Carla, Mrs. Johnson's daughter, saw the five pictures prior to her mother and informed her that the man they had seen at Fred Meyer's was included in the photographs. Therefore, Mrs. Johnson would have assumed that the robber was included among the photographs.

Finally, Viveros argues that the lineup was suggestive because Mrs. Johnson was under the assumption that all the photographs were of armed robbery suspects.

After much prodding by defense counsel, Officer Jansen, Mrs. Johnson and Carla all agreed that only one of the photographs was of a Mexican or Spanish male. One photograph appeared to be of a Native, according to the witnesses' testimony. The others appeared to be white.

The photograph of Viveros has a white line across it, and it is dark. However, another photograph has a large blotch in the upper lefthand corner and other photographs have dark backgrounds.

At the suppression hearing, the trial judge concluded that

[t]here is no evidence in my opinion to support there was anything suggestive in these photos. I've had lots of experience on the bench in looking at photos and also I defy anyone except an anthropologist after looking at these pictures to determine from them the ethnic background or—of any of these—of any of these parties, whether they're Mexican, Spanish-American or otherwise. They're all dark pictures . . . .

We agree that the photographic lineup was not suggestive, for the same reasons given by the trial judge. Moreover, any element of suggestiveness that may have been inherent in the pre-trial identification procedure was overcome by conclusive evidence that established that Mrs. Johnson's identification of Viveros was reliable.[1]

---

1. In examining pre-trial photographic identification procedures, we have consistently considered the totality of the circumstances. The "totality" approach includes examining both the suggestiveness of the identification procedure and its underlying reliability. *See Holden v. State,* 602 P.2d 452 (Alaska 1979); *Johnson v. State,* 580 P.2d 700 (Alaska 1978); *Gould v. State,* 579 P.2d 535 (Alaska 1978); *Noble v. State,* 552 P.2d 142 (Alaska 1976). The "per se" approach, which considers suggestiveness alone, has not been followed in Alaska. This approach was apparently derived from an interpretation of the United States Supreme Court cases of *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); and *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), and was followed in some United States courts of appeals. *See Manson v. Brathwaite,* 432 U.S. 98, 110, 97 S.Ct. 2243, 53 L.Ed.2d 140, 151 (1977). In *Manson,* the United States Supreme Court resolved the split·in lower federal

The evidence was uncontradicted that Mrs. Johnson recognized Viveros immediately upon his entry into the liquor store, and later when presented with his photograph, because she had gotten a lengthy view of him when she stood in a checkout line behind him a few days before the robbery.[2]

### B. The In-Court Identification.

Because we have concluded that the pretrial identification was proper, it is unnecessary to consider whether the in-court identification was permissible in the wake of an impermissible pre-trial identification. *See Cox v. State*, 575 P.2d 297, 304 (Alaska 1978). This is not a case where an improper pre-trial procedure has lead to a "substantial likelihood of irreparable misidentification." *Gould v. State*, 579 P.2d 535, 537 (Alaska 1978) (footnote and citation omitted).

courts by unambiguously discrediting this interpretation and adopting the "totality" approach. We decline to follow Viveros' invitation to now adopt the "per se" approach both because it runs counter to the clear weight of authority in Alaska and the federal system, and because it results in the unnecessary exclusion of much reliable evidence.

2. At trial, this colloquy took place:

 Q. Okay. Now, would you state whether or not you had ever seen that individual [the person who robbed Mrs. Johnson] before?
 A. [Johnson] Yes, my daughter and I were shopping at Fred Meyers one Sunday after work and there was a young man in front of us and what drew my attention to the purchase was the cashier didn't know how to ring up $600 so at that time I asked what does Fred Meyer have for $600? I thought it was a discount store. I'm not sure who responded, the cashier or the young man, that said a microwave oven. So at that time she called another young man over to show her how to ring it up.
 Q. Okay. And he was in front of you in the checkout line?
 A. Right. I was directly behind him.
 Q. And how long would you say that you were there behind him?
 A. I would say about 10 minutes for the transaction.
 Q. Okay. Did you have occasion to look at him at that time?
 A. Yes, I did.
 Q. And are you sure it was the same man that came into the store?

## II. VALIDITY OF THE JURY INSTRUCTION

Viveros was convicted of armed robbery under AS 11.15.240 and AS 11.15.295.[3] The judge instructed the jury as follows:

### Instruction 15

In order for the defendant to be found guilty of violating Sections 11.15.240 and 11.15.295 of the Alaska Statutes as just read, the evidence must prove beyond a reasonable doubt each of the following:

1) That on or about the 7th day of November, 1977, at or near Anchorage, Alaska,

2) The defendant George E. Viveros took United States currency from the person of Joyce M. Johnson;

3) That said taking was accomplished by force and violence or by putting Joyce M. Johnson in fear with a handgun; and

A. It was the same young man that came into the liquor store.
Q. Why are you so sure about that?
A. Because of his face. It was one of those unforgettable faces.
Q. Would you state whether or not you ever thought about that microwave oven again before he told you it was a stickup?
A. Well, when I looked up and I saw him come in the store, after he laid—before he laid the dollar on the counter, I looked and I saw it was the same guy that I saw at Fred Meyers and I started to ask him something about the microwave oven, how it worked or whatever, and I don't know there's something told me not to.

3. AS 11.15.240 provides:

 A person who, by force or violence, or by putting in fear, steals and takes anything of value from the person of another is guilty of robbery, and is punishable by imprisonment in the penitentiary for not more than 15 years nor less than one year.

 AS 11.15.295 provides for an enhanced sentence if a firearm is used during the commission of certain felonies:

 A person who uses or carries a firearm during the commission of a robbery, assault, murder, rape, burglary, or kidnapping is guilty of a felony and upon conviction for a first offense is punishable by imprisonment for not less than 10 years. Upon conviction for a second or subsequent offense in violation of this section, the offender shall be imprisoned for not less than 25 years.

4) At the time of said taking, the defendant intended then and there to deprive said Joyce M. Johnson of said property.

Viveros objects to subparagraph 3 in the instruction because, in his view, the disjunctive "or" would leave the jury free to find that the taking occurred either by force and violence, or by putting Mrs. Johnson in fear with a handgun. Timely objection was made at trial. He argues that some members of the jury might have convicted on the grounds that there was no handgun employed, but that Viveros used force and violence alone. In the latter case, the evidence would only sustain a conviction for simple robbery under AS 11.15.240 without the enhancement provision of AS 11.15.295 for armed robbery.

In *Nickerson v. State,* 492 P.2d 118 (Alaska 1971), a defendant was charged with both possession and sale of narcotics. In examining a possibly ambiguous jury instruction, we concluded that there was no real possibility that the defendant was convicted of possession alone where a review of the evidence showed "convincingly" that the defendant was on trial for a drug sale and not just for possession. *Id.* at 121 n. 10.

■ Here the evidence was not so convincing that Viveros was on trial for armed robbery alone. Mrs. Johnson never saw the robber actually produce a weapon.

Her testimony was that she saw the handle of a gun. A jury was entitled to evaluate her powers of observation and also to determine whether the handle was in fact attached to a firearm. Some jurors could have believed that Viveros did not have a firearm. It is clear, however, that all jurors found that all elements of robbery were proved. Whether they believed that Viveros stole by force and violence or by putting Mrs. Johnson in fear by use of a firearm, he was guilty of robbery. To vote that he had

put her in fear by use of a firearm requires a finding that he stole by force and violence. Therefore, while the disjunctive instruction could have resulted in a nonunanimous verdict as to Viveros' use of a firearm, it is clear that the jury must have found all the elements of robbery. Consequently, it is not necessary to reverse a conviction for robbery once the enhancement provision of AS 11.15.295 is removed. It is necessary, however, to reverse the conviction for violation of AS 11.15.295.

Upon remand the state may either dismiss the count for violation of AS 11.15.295, or retry Viveros. In the event that the state choses to dismiss the section 295 charge, it will be necessary for the trial court to resentence Viveros.[4]

■ The maximum sentence for robbery under AS 11.15.240 is fifteen years. Under the enhanced sentence provision of AS 11.15.295, for use of a firearm during a robbery a judge is required to impose a minimum sentence of ten years for a defendant's first offense under the statute. Viveros' fifteen-year sentence does not exceed the permissible sentence for robbery. In our view, however, the maximum sentence for robbery may have resulted because of the trial judge's belief that he was required to enhance Viveros' sentence under AS 11.15.295. In the event of resentencing, the trial judge should not consider the enhancement provisions of AS 11.15.295, nor the minimum sentence imposed by that section.[5]

Given our view of the case it is unnecessary to consider Viveros' alternative argument, that a lesser included offense instruction on plain robbery should have been given.

This case is reversed and remanded for resentencing or retrial in accordance with the views expressed in this opinion.

REVERSED and REMANDED.

4. We have consistently taken the position that resentencing is required where a sentencing court has been mistaken concerning allowable sentence limits. *Deal v. State,* 587 P.2d 740, 741 n. 5 (Alaska 1978), and cases cited therein.

5. By this remand, we express no opinion as to whether the sentence should be reduced. That is dependent on whether the length of sentence was influenced by the conviction for violation of AS 11.15.295.