Charles R. TOOKAK, Appellant,

v.

STATE of Alaska, Appellee.

No. 4656.

Court of Appeals of Alaska.

July 30, 1982.

---

Paul Canarsky, David Backstrom, James D. Oswald, Asst. Public Defenders, Fairbanks, and Brian Shortell, Public Defender, Anchorage, for appellant.

# 1020

Randy M. Olsen, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

SINGLETON, Judge.

On Saturday, May 13, 1978, "D. B.," after making various purchases at a shopping center in Fairbanks, was entering her car in the parking lot when a man jumped into the car, pointed a gun at her and told her to drive away. She was ordered to drive to a lightly travelled road and when they arrived her assailant dragged her out of the car, off the road, and raped her. There was evidence that the assailant initially had difficulty in achieving penetration and that in order to facilitate intercourse he tried to get the victim to relax by forcing her to drink wine. After the rape, the assailant tied D. B. and left her in the woods, fleeing in her car. D. B. managed to untie herself, flag a car down, and obtain transportation to a hospital, where evidence of prior sexual intercourse was discovered.

D. B. generally described her assailant as a young Japanese/Hawaiian male (D. B. had not had much contact with Alaska Native people, but her description also fits a general description of an Alaska Native). Soon after the rape, the victim was shown a series of five photographic lineups, involving men generally fitting this description; D. B. did not identify anyone as her assailant. A picture of the defendant did not appear in any of the lineups. D. B. did identify Charles Tookak in a sixth photographic lineup, but desired to see Tookak in person to be certain of a correct identification. A corporeal lineup took place in Fairbanks with six participants of similar age, sex, and racial background, and D. B. identified Tookak.

After the identification a search warrant was served on Tookak's family home in Barrow and a variety of items were found. Among the items were women's underwear (identical to that owned by D. B. and never recovered at the scene of the crime), plane tickets (Barrow to Fairbanks and a return trip to Barrow), hotel receipts from Fairbanks, a calendar with "Fbnks" marked on May 10 and "BRW" marked on May 19, a camera similar to the one with which the assailant was seen, and a packet of photographs depicting scenes of Fairbanks.

The defendant was subsequently indicted by the grand jury on four charges: kidnapping, rape, assault with intent to rape, and joyriding. He was tried and convicted on all four counts and was sentenced to twenty years for the kidnapping, twenty years on the rape charge, to be served consecutively with the kidnapping charge, fifteen years for assault with intent to commit rape, concurrent with the rape charge, and a consecutive one-year sentence for the joyriding charge.

The defendant first alleges that during the grand jury proceedings the district attorney, failed to present exculpatory evidence, thus giving rise to a defective bill. Two witnesses testified at the grand jury proceeding: D. B. and Inspector Flothe. It is Flothe's testimony that Tookak challenges as misleading. Furthermore, Tookak contends that the district attorney's failure to correct this testimony violated Alaska Rule of Criminal Procedure 6(q).[1] Specifically, Tookak challenges two segments of Flothe's testimony. First, Tookak challenges D. B.'s identification or lack of identification of a certain pistol allegedly used by Tookak during the rape and second, Tookak challenges the failure of other alleged

---

1. Alaska R.Crim.P. 6(q) states:

   (q) Sufficiency of Evidence. When the grand jury has reason to believe that other available evidence will explain away the charge, it shall order such evidence to be produced and for that purpose may require the prosecuting attorney to subpoena witnesses. An indictment shall not be found nor a presentment made upon the statement of a grand juror unless such grand juror is sworn and examined as a witness. The grand jury shall find an indictment when all the evidence taken together, if unexplained or uncontradicted, would warrant a conviction of the defendant.

eye-witnesses who were in the vicinity of the parking lot where D. B. was abducted to identify Tookak at the corporeal lineup.

Flothe testified that upon being shown various examples, D. B. had pointed out a certain pistol in a photograph as similar to the one used during the rape. Flothe then testified that he found a gun in Tookak's home in Barrow that was similar to the one identified by D. B. Tookak contends that prior to Flothe's appearance before the grand jury, D. B. had denied that the pistol found in Barrow was similar to that used in the rape. He argues Flothe's failure to mention this denial was misleading and constituted a breach of the district attorney's duty to present "exculpatory" evidence.

■■■ The defendant's other objection concerns the district attorney's failure to point out to the grand jury the failure of certain alleged witnesses to identify him. We do not find this evidence "exculpatory" under Alaska case law. In *Frink v. State*, 597 P.2d 154, 166 (Alaska 1979), the court noted that the prosecution does not have to "develop" evidence for the defendant, or present leads "possibly favorable" to the defendant. His duty is to present evidence which will tend to negate guilt. 597 P.2d at 165, *citing Johnson v. Superior Court*, 539 P.2d 792 (Cal.1975). Furthermore, the prosecutor need only present evidence material to the charge upon which the defendant is accused: only material substantially favorable to the defendant need be presented. *McMahan v. State*, 617 P.2d 494, 500 (Alaska 1980); *State v. Keith*, 612 P.2d 977, 981 (Alaska 1980); *see Miller v. State*, 629 P.2d 546, 548 (Alaska App.1981); *see also Mallott v. State*, 608 P.2d 737, 743–44 (Alaska 1980).

The failure of other alleged witnesses to identify Tookak does not meet the test of negating the defendant's guilt. It is at best neutral evidence. No one present at the scene of the abduction told the police that Tookak was not the assailant; the people in question were simply unable to positively

state that he was the assailant. In light of the physical surroundings, their location, and the assailant's proximity, this evidence was not exculpatory. There was substantial evidence presented at the grand jury implicating Tookak: plane tickets, hotel receipts, film and the testimony of D. B. were more than enough to support the indictment. No duty of the prosecutor was breached.

■■■ While not exculpatory, a closer question is presented by the testimony regarding the gun since there is a risk that the grand jury might have been misled. Since the officer had not shown D. B. the weapon prior to testifying before the grand jury, he was unaware that she could not identify it. The weapon previously described by D. B. was similar to the weapon found in Tookak's residence; thus, there is no suggestion that Flothe's testimony was intentionally misleading. We are not persuaded, therefore, that Flothe's testimony about the gun warrants dismissal of the indictment in light of the overwhelming evidence of Tookak's guilt presented to the grand jury. Given D. B.'s positive identification and the substantial evidence corroborating it, we do not believe that the grand jury would have refused to indict had they known that D. B. had failed to identify the weapon seized. Furthermore, we do not consider D. B.'s failure to identify the gun as so significant that it put the state under a duty to reconvene the grand jury and disclose this fact. *See Miller v. State*, 629 P.2d 546 (Alaska App.1981).

Tookak next asserts that his corporeal lineup was unnecessarily suggestive. Specifically, he contends that the others in the lineup were both shorter and thinner than he; there was only one other person with a facial scar; and the hair of the defendant was not pulled back as was that of other participants in the lineup. The supreme court has addressed the issue of suggestive lineups in a number of cases.[2] The test for

2. *See, Holden v. State*, 602 P.2d 452 (Alaska 1979); *Gould v. State*, 579 P.2d 535 (Alaska 1978); *Buchanan v. State*, 561 P.2d 1197 (Alaska 1977); *Blue v. State*, 558 P.2d 636 (Alaska 1977); *Nobel v. State*, 552 P.2d 142 (Alaska 1976). *See also Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967); N. Sobel, *Eye-Witness Identification:*

suggestiveness proposed in *Noble v. State* is whether the procedure suggests in advance the identification of the person suspected by the police. The identification procedure in the *Noble* decision was found not so suggestive as to create a "substantial likelihood of mistaken identification," even though the defendant in *Noble* had the longest hair in the lineup and the police knew the witness had emphasized the assailant's long hair in that case. 552 P.2d at 146. Other considerations noted by the court in *Noble* were the victim's opportunity to view the defendant and the necessity of the identification procedure used.

■ Application of the *Noble* test to this case leads us to the conclusion that the identification procedure used here was not unduly suggestive: D. B. had ample opportunity to view the defendant when he entered the car, when his bandana fell, and again immediately before the rape. At the lineup D. B. had no trouble identifying Tookak as the rapist. Furthermore, we cannot conclude that Tookak was truly distinctive among those included in either the corporeal or photographic lineups.

In a more recent case, *Viveros v. State*, 606 P.2d 790 (Alaska 1980), the defendant argued that a photographic lineup was suggestive because he was the only Spanish-Mexican pictured. The court in *Viveros* declined to consider suggestiveness in isolation, fearing the exclusion of much reliable evidence. Thus, the court stated that it will also look to the underlying reliability of the pretrial identification. 606 P.2d at 792 n.1. In *Viveros* the identification was found reliable in light of the length of time the witness viewed the defendant.

D. B.'s identification of Tookak is similarly reliable. D. B. had numerous opportunities to view Tookak. She was presented with five sets of photo lineups, which did not contain Tookak's picture, and she did not point anyone out; it was only when she was presented with the sixth lineup, which contained Tookak's picture, that she successfully picked out her assailant. At this point D. B. wanted to verify the identifica-

tion with a corporeal lineup. At the physical lineup D. B. easily picked out Tookak. Since D. B.'s identification appears to be reliable, we conclude that neither the *Noble* nor the *Viveros* test was violated.

Tookak's most meritorious contention is that the assault with intent to commit rape charge should have been deemed included in the rape charge. Consequently, he argues that conviction and punishment under both is a violation of the double jeopardy provision of the Alaska Constitution (article I, section 9). In effect Tookak presents a twofold argument: First, that assault with intent to commit rape is a lesser-included offense of the rape charge and second, that the assault of D. B. constituted one action and cannot be fragmented into two separate offenses. We agree with Tookak's contentions.

■ Although the double jeopardy issue was not raised in the trial court, we recognize the defect as a plain error. Alaska R.Crim.P. 47(b); *Gilbert v. State*, 598 P.2d 87, 92 (Alaska 1979). The standard of plain error is met in the case at bar because the error affects a substantial right, is obvious, and is prejudicial. Tookak's conviction and sentence on the assault with intent to commit rape charge violates the double jeopardy provision of the fifth amendment to the United States Constitution and article I, section 9 of the Alaska Constitution. *Tuckfield v. State*, 621 P.2d 1350 (Alaska 1981). Double jeopardy is violated by convictions of both an offense and a lesser-included offense, unless the convictions arise from separate conduct. In *Tuckfield*, it was concluded that absent separate incidents, completion of a rape requires that there be an assault with intent to commit rape. 621 P.2d at 1353. Therefore we must determine whether there was one assault or two separate occurrences during the rape of D. B.

Neither party argued this issue at trial. However D. B. testified that she was dragged from her vehicle and was tied up with a belt and bandana and was blindfold-

*Legal and Practical Problems* § 56.04, at 109    (1972).

ed. She stated that after tying her, Tookak went back to the car and returned with a newspaper and pillows. He then proceeded to untie her feet and undress her. At first Tookak had difficulty in achieving penetration so he told her to loosen up and he poured wine into her mouth. After that, the rape was consummated. From D. B.'s own testimony we can ascertain that the defendant never broke off the assault and left the area before achieving penetration; there was a continuity of time and place. In *Whitton v. State*, 479 P.2d 302 (Alaska 1970), the court provided an excellent and thorough discussion of double jeopardy.[3] The *Whitton* court rejected the "same evidence" test and found an examination of the defendant's intent and conduct in the two offenses to be dispositive. 479 P.2d at 311–12. *See also Brookins v. State*, 600 P.2d 12 (Alaska 1979); *Lacy v. State*, 608 P.2d 19 (Alaska 1980). Importantly, if a judge decides to impose multiple sentences on a defendant, the reasons for the trial court's decision must be set out in the record. 479 P.2d at 312.

With respect to the charges of rape and assault with intent to commit rape, we conclude that Tookak has been subjected to multiple punishment for a single crime. The differences in intent and conduct between the rape and assault with intent to rape were not substantial here. Tookak had one purpose: the rape of D. B. His initial difficulty in fulfilling this objective does not justify imposing a sentence for violation of a distinct and separate societal interest. When the evidence is considered in terms of Tookak's intent, and the time, place, and manner of his conduct, it is clear that one continuous assault occurred culminating in D. B.'s rape. This case is therefore governed by the recent ruling in *Tuckfield v. State*, 621 P.2d 1350 (Alaska 1981), and the separate sentence imposed for assault with intent to rape must be held impermissible. We therefore remand with instructions to vacate Tookak's conviction and sentence on the lesser charge, assault with intent to commit rape.

Tookak was sentenced to twenty years on the kidnapping charge, twenty years on the rape charge, fifteen years for the assault with intent to commit rape, and one year on the joyriding charge. As we noted above, the assault with intent to commit rape sentence is void because it conflicts with the double jeopardy proscriptions of both the Alaska and United States Constitutions. The kidnapping, rape, and joyriding sentence are to be served consecutively for a total of forty-one years.

The trial court apparently found Tookak to be a worst offender. *See Wortham v. State*, 537 P.2d 1117 (Alaska 1975). In *Wortham*, the court held that maximum sentences will not be imposed without some foundation for characterizing the defendant as the worst type of offender. The factors to consider in making this determination include: prior criminal convictions, age, military records, employment history, drug or alcohol addiction, and presentence reports on antisocial behavior. 537 P.2d at 1120.

■ Applying these factors to the case at hand we find that Tookak has an extensive criminal background, beginning with a history of minor violent offenses (disorderly conduct, assault and battery) and, not including the present offenses, culminating with two felonies (grand larceny and burglary not in a dwelling). Although the defendant is only twenty-five years of age, he has been involved in unlawful activities since the age of ten. His lawful employment history is sparse, yet he made substantial amounts of money from bootlegging in Barrow the year before the present offenses were committed. The presentence report indicates that Tookak has a prolonged history of antisocial activity. A long sentence is therefore necessary to isolate him and to protect the community. *See Tuckfield v. State*, 621 P.2d 1350, 1353–54 (Alaska 1981). Nevertheless, we believe that a total sentence of forty-one years cannot be sustained in light of *Hintz v.*

---

**3.** The defendants in *Whitton* protested their conviction for robbery as well as the crime of using a firearm during the commission of the same robbery.

*State*, 627 P.2d 207 (Alaska 1981); *see Helmer v. State*, 616 P.2d 884 (Alaska 1980). While Tookak's record is worse than Hintz's, Hintz's crime was more serious[4] and on balance we do not believe Tookak's total sentence should exceed the thirty years to which Hintz's sentence was reduced.

The judgment of the superior court is therefore AFFIRMED in part and REVERSED in part and the case is REMANDED for resentencing to a total term not to exceed thirty years.

---

4. Hintz, who had previously been convicted of one felony, a 1975 conviction for burglary not in a dwelling, kidnapped R. S. at gunpoint, drove her in her own vehicle to a secluded place and raped her. He then abandoned her, leaving her clothed only in boots and a jacket in minus 13° weather. Thus, the facts of this case are almost identical to those of *Hintz*, except for the circumstances of the abandonment which posed a much greater risk of death from exposure to R. S. than to D. B.