Joseph E. CONTRERAS, Appellant,

v.

STATE of Alaska, Appellee.

No. A–1826.

Court of Appeals of Alaska.

Jan. 20, 1989.

Linda Wilson, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

W.H. Hawley, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Joseph Contreras was convicted of kidnapping, an unclassified felony, in violation of AS 11.41.300(a)(1)(C); assault in the third degree, a class C felony, in violation of AS 11.41.220; and three counts of sexual assault in the first degree, a class A felony, under former AS 11.41.410. Contreras received concurrent sentences resulting in a composite sentence of fifty years with thirty years suspended. These sentences, while concurrent to each other, were made consecutive to sentences Contreras was currently serving for other of-fenses. Contreras is therefore subject to a total of ninety-seven years with thirty-two years suspended.[1] He must therefore serve sixty-five years' imprisonment. Contreras appeals, challenging his conviction and the resulting sentence. We affirm. We summarized the facts leading to the indictment in this case in *State v. Contreras*, 674 P.2d 792, 794 (Alaska App. 1983), *rev'd*, 718 P.2d 129 (Alaska 1986). The testimony at trial was consistent with the evidence presented to the grand jury. We will only discuss the facts where necessary to explain our legal conclusions.

Contreras first argues that the trial court erred in failing to grant his motion to dismiss on speedy trial grounds. *See* Alaska R.Crim.P. 45. Before trial, Contreras successfully sought suppression of one of the complaining witnesses' testimony in this case on the ground that the witness had been subjected to pretrial hypnosis. The bulk of the delay in this case occurred while this ruling was being considered on interlocutory review, first in this court, and later in the Alaska Supreme Court. *See Contreras v. State*, 718 P.2d 129, 130–31 (Alaska 1986) (outlining the history of this case).

We considered the impact of interlocutory review on a defendant's right to speedy trial under Criminal Rule 45 in *Sundberg v. State*, 657 P.2d 843 (Alaska App.1982), *rev'd on rehearing*, 667 P.2d 1268 (Alaska App.1983). In *Sundberg*, 667 P.2d at 1270, we held that where a case is heard on interlocutory review by an appellate court, Rule 45 does not begin to run anew immediately after remand, but rather Rule 45 allows the state a reasonable time in addition to the permitted 120 days to reintegrate the case into the trial calendar and bring the defendant to trial. Given that Sundberg's case was in the supreme court for a year and one-half on his first petition for review, we concluded, consist-

---

1. The total includes twenty-seven years imposed by Judge Serdahely and affirmed by this court in *Contreras v. State*, 675 P.2d 654, 657 (Alaska App.1984); ten years imposed by Judge Buckalew for a subsequent Anchorage escape and affirmed by this court in *Contreras v. State*, Memorandum Opinion and Judgment No. 636 (Alaska App., July 18, 1984); and ten years with two years suspended imposed by Judge Carpeneti for a Juneau escape which occurred in July of 1984. Thus, Contreras had already received sentences totaling forty-seven years with two years suspended before being sentenced in this case.

ent with the policies served by the rule, that a thirty-day delay would be reasonable. *Id.*

*Sundberg* suggests that a period of thirty days may be excluded without a showing by the state that any particular time was needed to put the case on the trial calendar. The court implied that additional time might be excluded if warranted by the facts of a particular case. In this case, the parties are in agreement that if thirty days are allowed in addition to the 120 days permitted by Rule 45 after the defendant's arrest, this case was brought to trial within the time permitted by Rule 45. We find that *Sundberg* is controlling and that no error has been established.

■ Contreras next argues that the trial court erred in failing to suppress identification of Contreras by one of the victims, E.L., pursuant to a photographic lineup. Contreras argues that the Alaska Supreme Court has noted that "generally corporeal identification is more accurate than a photographic identification." *Noble v. State*, 552 P.2d 142, 146 (Alaska 1976). He argues that we should establish a *per se* rule of suppression in any case where a defendant is identified from a photographic lineup where a corporeal lineup could have been arranged. Contreras relies on *People v. Anderson*, 389 Mich. 155, 205 N.W.2d 461 (1973). We decline to adopt a *per se* rule because we find it to be inconsistent with established Alaska authority. *See Viveros v. State*, 606 P.2d 790, 792–93 n. 1 (Alaska 1980). Instead, we apply a totality of the circumstances test in which we examine the "suggestiveness" of the lineup and the reliability of any resulting identification. *See Tookak v. State*, 648 P.2d 1018, 1021–22 (Alaska App.1982). Use of a photographic display rather than an in-person lineup is one of the circumstances the trial court may consider in determining the issue. It is not determinative. Having reviewed the record, we are satisfied that the identification procedure in this case was not so suggestive as to create a substantial likelihood of mistaken identification or to suggest in advance to E.L. that Contreras was the person the police suspected of these offenses. We are also satisfied that in light of the time the witness had to view the defendant, the trial court could find that E.L.'s in-court identification in this case was reliable. We therefore find no error.

■ Contreras next argues that it was error to require that he be shackled during trial. He relies on *Anthony v. State*, 521 P.2d 486, 495–96 (Alaska 1974). The trial court carefully considered the state's request to shackle Contreras at a hearing outside the presence of the jury. Contreras and his attorney participated in the hearing. After considering the record and the arguments of counsel, the court concluded that the state had sustained its burden of proving that there was an "extreme need" to shackle Contreras and that alternate less intrusive means to prevent his escape would not be effective. In order to avoid jury prejudice, the trial court ordered skirts placed around both the prosecution and defense tables so that the jurors could not observe that Contreras' legs were shackled. *See, e.g., United States v. Garcia*, 625 F.2d 162, 167–68 (7th Cir.1980), *cert. denied*, 449 U.S. 923, 101 S.Ct. 325, 66 L.Ed.2d 152 (1980); *Anthony*, 521 P.2d at 496. We are satisfied that the trial court had discretion to shackle Contreras in this case. Contreras has been previously convicted of serious crimes of violence, *see Contreras v. State*, 675 P.2d 654 (Alaska App.1984), and was charged with serious crimes of violence in this case. It is significant that he has been convicted of four separate escapes from custody. Further, there is evidence that he has made at least three other escapes for which he was not charged, including an escape from a trial in which he was participating. Given the obvious danger Contreras presents to the public and the serious risk of escape, the trial court had substantial discretion in acting to prevent a potential escape and to protect the safety and decorum of the court by shackling Contreras. *See* 3 W.R. LaFave and J.H. Israel, *Criminal Procedure* § 23.2(d) at 9–11 (1984). We find no error.

■ Contreras next argues that he should have been granted a mistrial when a juror saw him shackled and handcuffed

outside of the courtroom. He notes that an additional juror was told of the first juror's observations. Contreras also notes that the first juror inferred from the shackling that Contreras had committed other crimes. He concedes that the trial court interviewed each affected juror, determined that the observations had not been discussed with other jurors, and obtained promises from the two jurors that they would not hold their observations against Contreras. The trial judge strongly hinted to the jurors that Contreras was only in custody and restrained because he could not afford to make bail on these charges, and that had he made bail, he would have been free. The two jurors acknowledged that the inability to make bail would explain why Contreras was in custody. The trial judge instructed the jurors that they should not be prejudiced against Contreras because he was in custody. Each juror agreed not to be prejudiced. Contreras argues that under the totality of the circumstances, the inference that Contreras was a bad person because he had committed other crimes, and was dangerous because he was shackled, could not help but prejudice him in the eyes of the jury. *Cf.* Alaska Rules of Evidence 403 and 404(b) (generally precluding evidence of "other" bad acts in a criminal prosecution because of the risk of prejudice). We note that both jurors assured the court that they would not be prejudiced against Contreras. Under these circumstances, the trial court could find that Contreras was not prejudiced. *See United States v. Figueroa–Espinoza,* 454 F.2d 590, 591 (9th Cir.1972); *United States v. Leach,* 429 F.2d 956, 962 (8th Cir.1970), *cert. denied,* 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 151 (1971); *Hines v. State,* 703 P.2d 1175, 1176–78 (Alaska App.1985). The trial court therefore did not abuse its discretion by denying Contreras' motion for mistrial. *See Roth v. State,* 626 P.2d 583, 585 (Alaska App.1981).

■ Contreras next argues that the trial court committed plain error when it permitted one of the victims, S.J., to testify by reading a statement that she gave to the police before she was hypnotized. He concedes that his counsel stipulated to the

reading of the statement. He also recognizes that in *Contreras,* 718 P.2d at 139, the supreme court held that witnesses who have been hypnotized may testify only to facts which they related prior to hypnosis. It appears that the stipulation was an attempt to implement the supreme court's decision. Given the supreme court's treatment of this issue and defendant's failure to object at the trial level, we conclude that there was no plain error. *See* Alaska R.Crim.P. 47(b).

Finally, Contreras argues that the total sentence imposed in this case was excessive. Contreras was thirty-nine years old at the time of sentencing. Contreras has been a multiple drug abuser as an adult. He has an extensive criminal record. It is instructive to note that Contreras had several felony convictions and had served substantially more than a year in prison before coming to Alaska. Finally, his psychological and psychiatric evaluations are unfavorable, and he has been diagnosed as having an antisocial personality. It appears that Judge White's sentence, standing alone, was unremarkable given Contreras' background and the circumstances of these offenses. *See, e.g., Nix v. State,* 653 P.2d 1093 (Alaska App.1982). The difficulty in this case is that these sentences were made consecutive to sentences that Contreras had already received for his numerous escapes and for other offenses. Some of Contreras' other crimes, and the twenty-seven-year sentence he received for those crimes, are discussed in detail in *Contreras,* 675 P.2d at 655–57. The remainder of Contreras' prior sentences involves two separate convictions for escape in the second degree, a class B felony. AS 11.56.-310. For each offense, Contreras was subject to a six-year presumptive term, since he has more than two felony convictions. AS 12.55.125(d)(2). In addition, Judge Buckalew and Judge Carpeneti found aggravating factors, AS 12.55.155(c), and imposed ten-year adjusted sentences. Judge Carpeneti suspended two of the ten years.

■ In our prior cases, we have held that when a defendant is simultaneously sentenced for multiple offenses, the total

sentence including all consecutive increments must be justified under the standards adopted in *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970) (rehabilitation, deterrence of the offender and of others, and reaffirmation of community norms and, where necessary, isolation). Generally, except in cases of unclassified felonies, a sentence of ten years or less will satisfy the *Chaney* criteria of rehabilitation, deterrence, and reaffirmation of community norms. *Pears v. State*, 698 P.2d 1198, 1204–05 & n. 15 (Alaska 1985); *Pruett v. State*, 742 P.2d 257, 264 (Alaska App.1987). A composite sentence of more than ten years must rest on the *Chaney* goal of isolation. Isolation and incarceration are not synonymous. A sentence based on isolation requires a finding that the defendant will remain a danger to the public during the entire sentence imposed, *i.e.*, the defendant cannot be deterred or rehabilitated by a lesser sentence. *Larson v. State*, 688 P.2d 592, 599 (Alaska App.1984).

The state apparently acknowledges these authorities, but contended at oral argument that they have been superseded by more recent decisions of this court. *See Farmer v. State*, 746 P.2d 1300 (Alaska App.1987); *Jones v. State*, 744 P.2d 410 (Alaska App. 1987). In addition, the state sees inconsistencies between our treatment of composite sentences and recent legislation which the state views as manifesting a legislative intent to treat those convicted of serious crimes more severely than our decisions would permit. The state argues that, in the case of unclassified felonies, multiple convictions may properly result in a composite sentence exceeding the maximum term for the most serious offense committed. According to the state, the more severe composite sentence could be based solely on community condemnation of the defendant's conduct and the need to reaffirm community norms. It appears that the state's view is that there should be no additional requirement that the total sentence be justified by a need to isolate the defendant.

We are not persuaded by these arguments. First, despite many opportunities to do so, the legislature has not specifically addressed appropriate total sentences for serious offenders convicted of multiple offenses beyond establishing a slight preference for consecutive sentences in AS 12.55.-025(e) and (g). *See State v. Andrews*, 707 P.2d 900, 909–10 & n. 10 (Alaska App.1985), *aff'd*, 723 P.2d 85 (Alaska 1986). More importantly, the requirement that consecutive sentences which exceed the maximum sentence for the defendant's most serious offense be justified in terms of isolation, serves the legislative goals of avoiding disparity and ensuring uniformity in sentencing. These goals are served because the trial court is required to concentrate on the defendant's past proven criminal behavior. Particularly, the trial court must concentrate on the extent to which the defendant's amenability to deterrence and rehabilitation has been tested by substantial prior imprisonment. Furthermore, focusing on the need for isolation serves these legislative goals by requiring a comparison between the sentence imposed on the defendant under consideration and sentences imposed on other defendant's similarly situated.

■ We recognize that Contreras received a particularly severe sentence, considering all the consecutive increments, and that in many respects his sentence exceeds that permitted for other individuals convicted of very serious offenses. Nevertheless, Contreras' extensive criminal record, his numerous escapes, and his demonstrated dangerousness lead us to conclude that, under the totality of the circumstances, the total sentence imposed in this case was not clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

Four factors serve to distinguish Contreras' case from other serious offenders whose sentences we have previously considered. First, Contreras kidnapped two different individuals, threatened to kill them, and sexually assaulted them. Under these circumstances, each kidnapping was an unclassified felony with a maximum ninety-nine-year term of imprisonment. AS 12.55.125(b). Second, these offenses closely followed another incident in which Contreras broke into a woman's home, sex-

ually and physically assaulting the woman and her male companion. *See Contreras*, 675 P.2d at 655–56. Third, prior to coming to Alaska, Contreras had accumulated at least three felony convictions, numerous misdemeanor convictions, and a number of parole and probation revocations and had served substantial periods of imprisonment. Finally, Contreras has escaped from custody on at least seven occasions, four of which resulted in felony convictions. Contreras has not been deterred or rehabilitated despite serving substantial prison sentences, and being under probationary and parole supervision for extended periods of time. It appears that he has received substantial treatment for drug and alcohol abuse, but has been unable or unwilling to stop chemical abuse. Having carefully reviewed the record, we are satisfied that this is one of the very few cases in which the trial court could determine, based on a defendant's past proven criminal record, that he should be under correctional supervision for the remainder of his life. When a trial judge finds, based upon substantial evidence, that a person will remain a danger to the community for the remainder of his or her life, a sentence of ninety-seven years with with thirty-two years suspended is not clearly mistaken. *See Post v. State*, 580 P.2d 304, 308–09 (Alaska 1978); *Wortham v. State*, 689 P.2d 1133, 1143–44 (Alaska App.1984) (approving a composite sentence of fifty-three years of imprisonment for a defendant with a serious criminal record convicted of particularly heinous offenses). *But see Larson*, 688 P.2d at 600 (approving a forty-year sentence but finding the sentence should not be consecutive to a prior felony sentence); *Nix*, 653 P.2d at 1101 (reducing composite sentence to forty years for a repeat felony offender convicted of several serious crimes).

The judgment and sentence of the superior court are AFFIRMED.