Rene MILLER, Appellant,

v.

STATE of Alaska, Appellee.

No. 4972.

Court of Appeals of Alaska.

June 11, 1981.

---

Joseph A. Kalamarides, Anchorage, for appellant.

David Mannheimer, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

On November 20, 1978, at approximately 8:30 a. m., three men robbed McMahan's Furniture Store in Anchorage at gunpoint. One of the robbers, George Miller, a former employee at McMahan's, confessed and identified his brother, Rene Miller, and Wilton Toney as his accomplices.

George and his girlfriend, Chere Wilson, testified before the grand jury. By previous agreement, they concealed from the grand jury, Chere's involvement in preparing for the robbery. They conceded at trial that in so doing they lied, and the state likewise concedes that Chere was an accomplice and that the concealment constituted perjury.

The grand jury indicted Rene Miller and Wilton Toney, and they were tried together. Miller was convicted; Toney acquitted. Rene Miller was sentenced to 10 years with three suspended. He appeals alleging five errors: (1) the trial judge should have dismissed the indictment due to the admitted perjury of George Miller and Chere Wilson; (2) the trial judge should have granted a judgment of acquittal because the testimony of George and Chere, admitted accomplices, was insufficiently corroborated at trial; (3) the trial judge should have granted a new trial for the same reason; (4) the sentence imposed was erroneous in that it was excessive; and (5) the trial court erred in sentencing Rene to prison rather than placing him in a drug rehabilitation program. These alleged errors will be discussed in turn and the relevant facts set out.

## PERJURY BEFORE THE GRAND JURY

George Miller and Chere Wilson told the grand jury that Chere did not learn of the robbery until after it took place.[1] The state concedes that in fact she was an accomplice, though the state did not learn this until trial. Once learned, the state immediately informed appellant's counsel. Wilson's involvement, as well as the falsehoods regarding it that she and George told the grand jury, were thoroughly explored during cross-examination before the trial jury. Must the conviction nevertheless be set aside and the indictment dismissed because these witnesses lied to the grand jury? We think not.

The supreme court has held that where false evidence is presented to the grand jury without knowledge or complicity of the state and is immaterial, i. e., does not sub-

1. While stressing the false testimony to the grand jury regarding Wilson's involvement in the robbery, Rene Miller also points to other inconsistencies between George Miller's trial testimony and his testimony before the grand jury, e. g., at what time the robbery was planned, whether appellant and Toney had larcenous intent, and whether the gun used by George in the robbery was given to him or purchased at a local night club. Since George told the grand jury that he planned the robbery and was in full charge of the operation and further acknowledged that the gun in question was stolen, we deem those additional alleged inconsistencies inconsequential and conclude that they add nothing to the conceded perjury regarding Wilson. *See State v. Shelton*, 368 P.2d 817 (Alaska 1962).

stantially influence the result, the indictment need not be dismissed if the evidence is otherwise sufficient to establish probable cause. "If the unintentional misstatement goes to a nonmaterial fact that would not substantially affect the grand jury's conclusion, it would not be reversible error." *McMahan v. State*, 617 P.2d 494, 500 (Alaska 1980); *State v. Keith*, 612 P.2d 977, 981 (Alaska 1980).

■ Applying the Keith test, we conclude that the trial court correctly found that George Miller and Chere Wilson perjured themselves regarding Wilson's involvement in the robbery and that neither the state nor the appellants knew or could have known of the perjury before jeopardy attached.[2] We also agree with the trial court's finding that the perjury was immaterial, and its implicit finding that the grand jury would have returned an indictment even if they had known of Chere Wilson's involvement. We conclude that the trial court properly refused to dismiss the indictment.

Chere Wilson's testimony was largely cumulative of George Miller's. Even if her entire testimony is disregarded, there was still substantial evidence before the grand jury warranting an indictment. Although Miller's testimony was crucial to the indictment, the grand jury was instructed to view his testimony with caution because he was an admitted accomplice who had received immunity. Further, George Miller and the investigating police officer were extensively questioned by members of the grand jury regarding George's motivation for testifying, the benefits he would receive, and the circumstances surrounding the incident. We do not believe that additional information about Chere Wilson's involvement in the robbery or George Miller's willingness to lie about her involvement, all of which

was essentially collateral to Rene Miller's participation in the robbery, would have materially affected the grand jury's deliberation or led it to refuse to return an indictment. *See State v. Brewer*, 26 Ariz.App. 408, 549 P.2d 188, 191 (1976).

■ We conclude that the perjury did not relate to Rene Miller's involvement in the robbery and a trial jury with full knowledge of the perjury, enlightened by extensive cross-examination, nevertheless convicted. We also note that the subject matter of the perjury, George's protection of his girlfriend, might well have been viewed by the grand jury as a natural, though wrongful, reaction which would not necessarily destroy the credibility of his other testimony. We specifically note that testimony by an accomplice before the grand jury does not require corroboration. *See Merrill v. State*, 423 P.2d 686, 695 (Alaska 1967), *cert. denied*, 386 U.S. 1040, 87 S.Ct. 1497, 18 L.Ed.2d 607 (1967).

## THE MOTION FOR JUDGMENT OF ACQUITTAL AND FOR NEW TRIAL

■ Rene Miller moved for a judgment of acquittal and alternatively for a new trial, and these motions were denied. The testimony of George Miller, if believed, was clearly sufficient to warrant a finding that Rene was guilty of the robbery beyond a reasonable doubt. *See Jennings v. State*, 404 P.2d 652 (Alaska 1965). Rene's motion or judgment of acquittal rests on the assertion that George Miller's testimony was not sufficiently corroborated by nonaccomplice testimony or evidence to permit its consideration and without it there was insufficient evidence to convict. *See Oxenberg v. State*, 362 P.2d 893, 897 (Alaska 1961), *app. dismissed*, 368 U.S. 56, 82 S.Ct. 189, 7 L.Ed.2d 128 (1961) and AS 12.45.020.[3] We

2. We. decline to decide what action would be appropriate if the state suborned the perjury or learned of it prior to the discharge of the grand jury or before jeopardy attached. *Cf. United States v. Basurto*, 497 F.2d 781, 784–787 (9th Cir. 1974).

3. AS 12.45.020 provides as follows:

Conviction on testimony of accomplice and corroboration. A conviction shall not be had on the testimony of an accomplice unless it is corroborated by other evidence which tends to connect the defendant with the commission of the crime; and the corroboration is not sufficient if it merely shows the commis-

feel that there was sufficient evidence to sustain the trial court's finding that George Miller's testimony was sufficiently corroborated, and we therefore find no clear error.

The testimony of the store employees establishes the fact of the robbery and clearly corroborates George Miller's testimony that Rene was a participant. Jose Amador, the assistant manager at McMahan's, described one of the robbers as a caucasian, 5'11", weighing approximately 150 pounds with "striking eyes" and "real blond eyebrows," wearing a dark colored ski mask and carrying a pump shotgun. George Williams, the manager, described the robber with the shotgun as having "light eyebrows" and "light hair." George Miller identified the shotgun-carrying robber as his brother, Rene. Rene Miller is 6'1" tall, weighs 185 pounds, and has light brown hair and eyebrows. The trial court, who observed appellant during trial found that the employees' description was consistent with that of Rene Miller.[4] In addition, the Miller's brother Randy, whom Rene does not allege to be an accomplice, testified that he loaned a .38 caliber pistol to George in November 1978. About a week and a half later, when he went to George's house to retrieve it, George told him that he could find it in the basement. There he met Rene, who told him that the gun had been used in "something illegal." While Rene is correct that his statement shows nothing more than knowledge of the robbery and perhaps George Miller's involvement, factors which alone do not establish Rene's complicity, such knowledge does serve to corroborate George's testimony that Rene participated in discussions about the robbery and serves to strengthen the conclusion that George's overall testimony is truthful.

Hutchell Moore, a neighbor of George and Rene Miller, testified that four to five days prior the McMahan robbery, the two Millers discussed robbing McMahan's with him.[5] He also testified that at Rene's suggestion he drove Rene to a location to pick up a single-barrel shotgun for use in the robbery. Finally, Moore remembered a meeting with the two Millers after the robbery, during which the robbery was discussed. While George did most of the talking, Rene indicated that he had participated.

Given the considerable latitude provided a trial judge in determining whether the accomplice's testimony is sufficiently corroborated to warrant submission of that testimony to the jury, we find no error in the denial of the motion for judgment of acquittal. *See Oxenberg v. State*, 362 P.2d at 897. While we agree with appellant that a different standard governs a trial court's ruling on a motion for new trial under Criminal Rule 29(b), *see Amidon v. State*, 565 P.2d 1248, 1262 (Alaska 1977), here there was an evidentiary basis for the jury's verdict. Therefore, we cannot say that the trial court committed an abuse of discretion in denying Rene Miller's motion for a new trial. *See id.*

## SENTENCE APPEAL

■ Rene Miller challenges the length of his sentence and the decision not to place

---

sion of the crime or the circumstances of the commission.

4. On appeal, appellant vigorously argues that Amador's description of blond hair and eyebrows is totally inconsistent with appellant's light brown hair and eyebrows. We disagree. Webster defines blond(e), as of human hair, as flaxen, golden, light auburn, or pale yellowish-brown. Webster's Third New International Dictionary at 236 (1966). Auburn is defined as light yellowish-brown. *Id.* at 142. It is instructive that Chere Wilson, who had spent substantial time with appellant, described him to the grand jury as having blondish-brown hair and being kind of short, about 5'8", 5'9".

5. Rene Miller contends for the first time on appeal that Moore, as well as Wilson, was an accomplice. We conclude that Rene Miller cannot raise this issue for the first time on appeal, especially after having affirmatively conceded at trial that Moore was not an accomplice and that under the trial court's instructions, the jury was properly left with the decision as to Moore's complicity. We therefore consider Moore's testimony in determining whether George Miller's testimony was sufficiently corroborated.

him in a therapeutic community. Miller is a 23-year-old man, in good physical and mental health, who had an uneventful childhood. At 18 he joined the Navy where he received one disciplinary action for being AWOL, for which he received six months in the brig and a one-year restriction. Thereafter he was discharged, under undesirable conditions, on May 15, 1977. Up until the present he has lived in Anchorage and held a number of jobs. He has no juvenile record and, at the time of sentencing for this offense, had one prior felony conviction, which involved a shooting with intent to kill. This occurred on January 9, 1979, subsequent to the robbery. For the shooting, he received a 15-year sentence with six years suspended.[6]

The trial court gave Rene Miller a 10-year sentence with three years suspended to run concurrent with the sentence for shooting with intent to kill. No special restrictions were placed on parole. Since the offense under consideration occurred prior to January 1, 1980, it must be reviewed under the former statute. Former AS 11.15.240 provided a sentence of one to 15 years for robbery and former AS 11.15.295 enhanced the minimum sentence to 10 years where a firearm was used. However, all or part of the 10-year minimum sentence could be suspended in an appropriate case (AS 12.55.-080), or reduced if manifestly too severe (AS 11.05.150). *See also Deal v. State*, 587 P.2d 740 (Alaska 1978).

---

**6.** We recently affirmed this sentence in *Miller v. State*, (Alaska App., February 13, 1981).

Upon careful consideration of the record, we are convinced that the superior court conscientiously considered the relevant sentencing standards and fashioned an appropriate sentence based upon these considerations. *See State v. Chaney*, 477 P.2d 441 (Alaska 1970). We thus conclude that the superior court was not clearly mistaken in its determination of an appropriate sentence for appellant. *Cf. Benefield v. State*, 559 P.2d 91, 98 (Alaska 1977); *Middleton v. State*, 577 P.2d 1050, 1056 (Alaska 1978).

■ Finally, we reject the suggestion that the superior court was obligated to place Rene Miller in a therapeutic community rather than incarcerate him. We note that the court recommended that the Division of Corrections considered placement of appellant in such a community. Given the court's finding that the robbery was not motivated by drug use and the fact that appellant's two felony convictions evidence an indifference to the physical safety of others, the trial court's decision was not clearly mistaken. *See Johnson v. State*, 580 P.2d 700, 703 (Alaska 1978). *Cf. Roman v. State*, 570 P.2d 1235, 1244–45 (Alaska 1977).

The decision of the superior court is AFFIRMED.