John GRAYBILL, Appellant,

v.

STATE of Alaska, Appellee.

Ron GARROUTE, Appellant,

v.

STATE of Alaska, Appellee.

William PUNCHES, Appellant,

v.

STATE of Alaska, Appellee.

Nos. 6744–6746.

Court of Appeals of Alaska.

Oct. 28, 1983.

Patrick J. McKay, Pestinger & McKay, Anchorage, for appellants.

Eugene B. Cyrus, Asst. Dist. Atty., Victor C. Krumm, Dist. Atty., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Defendants, Ron Garroute, John Graybill, and William Punches, were convicted of numerous fish and game violations stemming from a hunting trip in the vicinity of Illiamna. On appeal, defendants jointly challenge their convictions on several grounds; Graybill, separately contends that his sentence is excessive. We conclude that the issues jointly raised by defendants can be disposed of summarily.[1] However, Graybill's contention that the sentence imposed by Judge Andrews was excessive requires more extensive consideration.

Defendants are Anchorage residents who flew to a hunting camp owned by guide Larry Bryant near the Koktuli River. They were caught engaging in illegal hunting activities by an undercover Alaska State Trooper who was posing as an out-of-state hunter. The trooper obtained evidence of three separate episodes of illegal hunting activity. Graybill and Punches each took one caribou during a closed season and sameday airborne. Graybill and Garroute used an airplane and explosives to select and herd a brown bear to other hunters. Graybill and Garroute also took a brown bear in Katmai National Park through use of their supercub aircraft.

Judge Andrews sentenced Graybill to a total of seven years' imprisonment, with

1. The issues raised, and our disposition of them, are as follows:

   (a) Defendants argue that Alaska R.Crim.P. 18.1 was violated by the filing of charges in Anchorage, rather than in Naknek, which is the closest urban center to the place where their violations occurred. They also argue that this rule was violated because their trial occurred in Anchorage.

   Defendants filed a motion for change of venue from Anchorage to Naknek; the state filed a motion for trial in Anchorage. Judge Mason found that the convenience of the parties and witnesses would be best served by trial in Anchorage, rather than in Naknek. We cannot find that Judge Mason's decision constituted an abuse of discretion. *See Wilson v. City of Kotzebue*, 627 P.2d 623, 636 (Alaska 1981); *Brown v. State*, 601 P.2d 221, 229–30 (Alaska 1979). We note that this situation differs significantly from that presented in *Alvarado v. State*, 486 P.2d 891 (Alaska 1971), in that the defendants in the present case were not residents of the senate district in which the offenses occurred, but were merely present on a temporary basis for the duration of their hunt; their offenses were not committed in populated locations and did not directly involve citizens of the locality.

   (b) Defendants argue that the trial court erred when it denied a defense request for an additional peremptory challenge. We find this claim to be without merit. The trial court's decision to grant or deny a request for an additional peremptory challenge is discretionary. Alaska R.Crim.P. 24(d). We find that, under *Ketzler v. State*, 634 P.2d 561, 566 (Alaska App.1981), appellants failed to demonstrate that good cause existed to grant an additional peremptory challenge.

   (c) Defendants argue that the trial court erred in refusing to permit impeachment of the complaining witnesses through proof that they had originally charged defendants with 259 violations of fish and game laws, when the number was ultimately dropped to approximately 81 counts. Judge Andrews refused to permit inquiry of law enforcement officers as to matters solely involving prosecutorial discretion; she found preliminarily that the original number of counts recommended was immaterial. Judge Andrews did not reject the possibility that evidence offered to show that the complaining witnesses had no grounds for a particular charge might be relevant for impeachment purposes; she asked the defense attorney to approach the bench and explain the relevance of any attempt at impeachment before cross-examination occurred. Apparently the defense made no attempt to show that the ultimate decision as to the number of counts charged was more than simply a matter of prosecutorial discretion. We find that no error occurred.

five and one-half years suspended; she also fined him $14,000, with $3,000 suspended, and revoked his hunting license for a total of forty-two years.[2] In imposing this sentence, Judge Andrews emphasized Graybill's role as instigator of the present violations as well as his history of fish and game violations. She further considered that Graybill was on probation for a fish and game offense and that his hunting license had been revoked. Since Graybill challenges the total sentence he received rather than the appropriateness of sentences on individual counts, we will review the sentence as a whole.

Judge Andrews's emphasis upon Graybill's criminal record and, in particular, his history of fish and game violations is amply supported by the record. Graybill violated Michigan fish and game laws in 1962 and 1965. His Alaska offenses include a 1971 conviction for illegal use of an aircraft; a 1972 conviction for illegal possession of a brown bear hide and, subsequently, a probation violation for that offense; an additional probation violation in 1973; and a conviction for malicious destruction of property in 1977. Graybill served 90 days, on weekends, for the 1972 probation violation and twenty-four days for the 1973 probation violation. In September, 1980, Graybill was convicted for taking game sameday airborne. As a result of this conviction he received 180 days with 170 days suspended and his hunting and trapping license was

revoked for twenty-four months. Graybill was on probation for the 1980 offense when he committed the present offenses. Additionally, charges against Graybill for hunting wolves from an airplane near Galena were pending in Fairbanks during his trial in this case. Despite Graybill's lengthy record, none of his convictions resulted in imposition of significant jail time.

Judge Andrews concluded that Graybill's prior record and his probationary status demonstrated a need to emphasize the sentencing factor of isolation in fashioning Graybill's sentence. She viewed the sentence she imposed as one designed to deter Graybill and others and to reaffirm societal norms. She considered Graybill's case to be "the worst possible scenario of what really could be one of the . . . great experiences of being an Alaskan." Implicit in Judge Andrews's statement is the conclusion that Graybill was a worst offender and that imposition of a maximum sentence was therefore justified. *See, e.g., State v. Wortham,* 537 P.2d 1117 (Alaska 1975); *Tookak v. State,* 648 P.2d 1018 (Alaska App. 1982).

We believe that this characterization of Graybill's status is amply supported by the record. Furthermore, given Graybill's status as a habitual fish and game violator, the fact that he was on probation and his hunting license was revoked, and the fact

---

**2.** Graybill was convicted of 20 counts, but sentenced only on 14. The precise breakdown of the sentences imposed upon Graybill is as follows: (1) Transporting Bear Same Day Airborne in violation of 5 AAC 81.140(c), 180 days with 135 days suspended (Count XXXVIII); (2) Use of Airplane to Drive Bear to Hunter in violation of 5 AAC 81.072(5), 180 days with 170 days suspended (Count XXX); (3) Taking Bear Same Day Airborne in violation of 5 AAC 81.-075, 180 days with 170 days suspended (Count XXXI); (4) Hunting Bear Without Hunting License for Hunter in violation of AS 16.05.-330(a), 180 days with 170 days suspended (Count XXIX); (5) Use of Airplane to Herd Brown Bear in violation of 5 AAC 81.072(5), 180 days with 150 days suspended (Count XXIII); (6) Transport of Caribou Taken Sameday Airborne in violation of 5 AAC 81.075(a), 180 days with 160 days suspended (Count VII); (7) Hunting for Bear Without Hunting License in

violation of AS 16.05.330(a), 180 days with 160 days suspended (Count XXII); (8) Hunting Without a Hunting License in violation of AS 16.05.330(a), 180 days with 135 days suspended (Count XXXIV); (9) Use of Airplane to Drive Brown Bear for Hunter in violation of 5 AAC 81.072(5), 180 days with 135 days suspended (Count XXXV); (10) Taking a Bear Sameday Airborne in violation of 5 AAC 81.075, 180 days with 135 days suspended (Count XXXVI); (11) Taking Caribou Sameday Airborne in violation of 5 AAC 81.075(a)(6), 180 days with 80 days suspended (Count III); (12) Use of Explosives to Drive Bear to Hunter in violation of 5 AAC 81.072(7), 180 days with 80 days suspended (Count XXV); (13) Taking Caribou During Closed Season in violation of 5 AAC 81.320(5), 180 days with 150 days suspended (Count II); (14) Hunting Without A License in violation of AS 16.05.330(a), 180 days with 150 days suspended (Count I).

that the crimes in this case involved three separate and distinct criminal episodes, we have little difficulty concluding that the use of consecutive sentences was appropriate. We hold that Judge Andrews was warranted in concluding that Graybill's repeated violations of fish and game laws called for an exceptionally severe overall sentence, one that included imposition of a significant jail term, a substantial fine, and prolonged loss of hunting privileges.

■ We are nevertheless unable to find that the extraordinarily high total sentence of seven years with five and one-half years suspended was appropriate, even in light of the aggravating factors present in this case.

The total sentence received by Graybill falls squarely within the felony range when the length of jail time actually to be served, the amount of probation imposed, and the amount of suspended jail time are all considered. Because as we have mentioned, Graybill deserved classification as a worst offender, it would be difficult to hold that imposition of a maximum misdemeanor sentence of one year in jail was clearly mistaken. Similarly, since Graybill was convicted of multiple offenses involving separate criminal conduct and intent, imposition of consecutive sentences was permissible. However, we note that when the length of suspended jail time is considered together with unsuspended jail time, the aggregate of Graybill's misdemeanor sentences was more than five years' imprisonment. Graybill's total sentence thus exceeded the sentence that could have been properly imposed if he had been convicted of a single class C felony; the total sentence fell within the range permissible for class B felonies. AS 12.55.125(d). We are unable to find that an aggregate sentence falling within the class B felony range was appropriate under the circumstances of this case.

Graybill's convictions arise from three discrete episodes that resulted in the illegal taking of two caribou and two bears. We are well aware that wildlife constitutes a vital resource in the state of Alaska and that high priority must be given to effective enforcement of fish and game laws. Only in this way can we be assured that our wildlife resources will be properly managed and that wildlife populations will be maintained at sustained levels. We further recognize that Graybill's offenses, particularly the use of explosives from an airplane to herd a brown bear, involved flagrant violations of fish and game laws. We must nevertheless acknowledge that, in terms of the nature of the harm involved, fish and game offenses are more closely akin to property crimes than they are to crimes of violence directed at persons.

Moreover, although Graybill's conduct was egregious in its utter disregard for the requirements of the law, the offenses themselves are not so inherently shocking as to warrant imposition of multiple consecutive sentences that exceed, in the aggregate, a sentence that could be imposed for a class C felony. A total sentence of this length is, we believe, simply disproportionate to the seriousness of Graybill's conduct.

Graybill's illegal acts involved three separate criminal episodes in which only crimes of a misdemeanor nature occurred and in which a total of only four animals were illegally taken. At least two of the four animals were not directly taken by Graybill. Thus, the extent of actual damage to wildlife resources that was occasioned by Graybill's violations is limited. Furthermore, this is not a case in which the violations were committed for commercial gain; Judge Andrews expressly noted that there was insufficient evidence to support a finding of commercial activity on Graybill's part.

Graybill's prior record and his conduct in this case reveal a disturbing lack of insight into his own problems and an almost unprecedented indifference to the importance of laws and regulations aimed at protecting Alaska's wildlife resources. However, in order to serve its purpose appropriately, Graybill's overall sentence must accurately reflect the past and present harm that he has caused. Although not directly binding in this case, we believe that the provisions of the revised criminal code dealing with

appropriate sentencing considerations are relevant here. AS 12.55.005(1) provides:

> *Declaration of Purpose.* The purpose of this chapter is to provide the means for determining the appropriate sentence to be imposed upon conviction of an offense. The legislature finds that the elimination of unjustified disparity in sentences and the attainment of reasonable uniformity in sentences can best be achieved through a sentencing framework fixed by statute as provided in this chapter. In imposing sentence, the court shall consider
>
> (1) the seriousness of the defendant's present offense in relation to other offenses; ...

The commentary to AS 12.55.005(1) sheds light on the significance of this language:

> [AS 12.55.005(1)] reflects the "just deserts" theory of punishment, which holds that justice requires that a sentence imposed on a defendant should be based on the crime he committed rather than on speculation as to his future behavior.

Commentary on the Alaska Revised Criminal Code, Senate Journal Supp. No. 47 at 148, 1978 Senate Journal 1399. Given the limited number of separate criminal episodes involved in Graybill's numerous convictions, the fact that only four animals were involved in the three incidents, and the lack of a commercial purpose, we find that a total sentence exceeding that which could be imposed on a class C felony offender does not adequately reflect the nature and scope of the harm that occurred as a result of Graybill's misconduct.[3]

We also note that Graybill's aggregate sentence, including suspended jail time, runs afoul of the provisions of the A.B.A. Standards on Sentencing Alternatives and Procedures, standard 18–2.1 (1980), which states, in relevant part:

> (e) Both the legislature and sentencing authorities should recognize that in many instances prison sentences which are now authorized, and sometimes required, are significantly higher than are needed in the vast majority of cases in order adequately to protect the interests of the public. For most offenses, the maximum prison term authorized ought not to exceed ten years and *normally should not exceed five years.* Longer sentences should be reserved for particularly serious offenses committed by particularly dangerous offenders.

A.B.A. Standards for Criminal Justice, Sentencing Alternatives and Procedures, § 18–2.1, p. 18, 25–26 (2d ed. 1980) (emphasis added). This standard, as well as its predecessor, has been endorsed by the Alaska Supreme Court on numerous occasions. *See, e.g., Stobaugh v. State,* 614 P.2d 767, 773 (Alaska 1980); *Smothers v. State,* 579 P.2d 1062, 1065 at n. 8 (Alaska 1978); *Salazar v. State,* 562 P.2d 694, 697 (Alaska 1977); *Donlun v. State,* 527 P.2d 472, 475 (Alaska 1974).[4]

---

**3.** We are particularly concerned by the comparison of Graybill's sentence with sentencing in other fish and game cases. Disparities in sentencing for violations of Alaska fish and game laws have recently received a great deal of attention. The recent report of the Alaska Judicial Council analyzing sentences imposed on violators of fish and game laws in 1980 through 1981 concluded that the identity of the sentencing judge is, statistically, a more significant factor in determining the sentence than is the seriousness of the offense itself or the offender's prior record of fish and game convictions. The report also concluded that there was a great disparity in sentences even when all statistically significant factors had been considered. *See* Statistical Analysis of Major Fish and Game Offense Sentencing Outcomes, Alaska Judicial Council (April, 1983). These conclusions underscore our concern with the imposition of aggregate sentences equalling that which could be imposed on a class B felony offender; it is obvious that Graybill's sentence is much harsher than the mean sentence imposed for similar offenses even when the special facts of Graybill's case are taken into account.

**4.** We recognize that the A.B.A. Standard is intended to refer to sentences of more than five years of unsuspended incarceration. We nonetheless believe that the standard constitutes a useful benchmark. Graybill's sentence exposes him to the possibility of serving seven years in jail if he violates the conditions of his probation. We believe it appropriate to refer to the A.B.A. Standard in determining whether imposition of the full term of incarceration could ever be justified, given the nature of the offenses involved in this case. While we think that trial courts must be allowed considerable

Given the lack of a commercial context, it would be inaccurate to label Graybill as a professional criminal. Graybill's offenses cannot properly be characterized as "particularly dangerous" ones, and Graybill cannot realistically be deemed a "particularly dangerous offender," except in terms of his seemingly unflagging willingness to continue violating fish and game laws. Under A.B.A. Standard 18–2.1, Graybill's recidivism would no doubt suffice to justify an overall sentence in excess of five years of actual jail time if he had been convicted of multiple offenses constituting class C felonies. However, we cannot ignore the fact that, while Graybill is certainly a "worst offender," in his class, his sentence was for acts that fell within the class of misdemeanor violations. More specifically, Graybill's offenses consisted of misdemeanors that were similar in nature to property crimes and did not directly threaten the lives or physical well-being of other persons. Under these circumstances, a total sentence exceeding the five-year limit recommended by the A.B.A. is uncalled for, even if a considerable period of the sentence is comprised of suspended jail time.

Finally, we are troubled by Judge Andrew's conclusion that Graybill is in effect incorrigible—that he cannot effectively be deterred from committing further offenses and that it is therefore necessary to isolate him for the protection of the public. We do not question Judge Andrews's conclusion that a severe sentence is necessary because Graybill's previous sentences have failed to deter him. However, we note that the longest prior sentence actually imposed upon Graybill was the ninety-day term that he served on weekends after being convicted of violating probation for his 1972 conviction of illegal possession of a brown bear hide. A sentence of seven years' imprisonment, with one and one-half years of unsuspended jail-time to serve, constitutes a

rather drastic increment from Graybill's prior sentences. We are not convinced that a sentence of intermediate length would not be effective as a deterrent against the commission of future fish and game violations by Graybill. In the context of the relatively short sentences previously imposed on Graybill, Judge Andrews's pessimism as to the potential for deterring Graybill may well be premature.

Upon consideration of the entire sentencing record in this case, and particularly in light of the considerations we have discussed in this opinion, we hold that Graybill's total jail term of seven years with five and one-half years suspended was too severe and that Judge Andrews was clearly mistaken in imposing this sentence. The provisions of the sentencing court's judgment dealing with incarceration must therefore be vacated, and this case must be remanded for imposition of an amended sentence.[5]

On remand, we believe that Judge Andrews should impose consecutive sentences totaling not more than three years in length. A total sentence of three years is, we believe, particularly appropriate in light of the fact that three distinct criminal episodes were involved in this case. The three-year total period that we have prescribed is triple the maximum period of incarceration permissible for misdemeanor convictions in general, and six times the maximum term provided for the particular offenses committed by Graybill. We further believe that, of the total three-year sentence to be imposed upon remand, no more than one year of unsuspended jail time should be ordered. A one year unsuspended term will accurately reflect Graybill's status as a worst misdemeanor offender, while also fulfilling the need to structure a sentence proportionate with the actual harm that has been done. Finally, we think that two years of suspended jail time, when coupled

---

flexibility in imposing suspended time, the use of inordinately severe suspended sentences cannot be condoned.

**5.** Graybill has also argued that the amount of his fine and the length of his license revocation

are excessive. We hold that Graybill's arguments on these points are without merit, and we affirm the district court's sentencing order in this regard.

with a year of actual time to serve, will provide a sufficient deterrent to future similar misconduct by Graybill. Should this prove not to be the case, the suspended two-year portion of the sentence will allow the court the ability to isolate Graybill and prevent his commission of further fish and game violations for an additional two-year period.

The convictions of Graybill, Garroute, and Punches are AFFIRMED. Graybill's sentence is VACATED and his case is REMANDED for resentencing in conformity with this opinion.