Charles E. BROWN, Appellant,

v.

STATE of Alaska, Appellee.

Melville L. MORRIS, Appellant,

v.

STATE of Alaska, Appellee.

Nos. 7658, 7659.

Court of Appeals of Alaska.

Dec. 21, 1984.

Mary E. Greene, Asst. Public Defender, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellant Brown.

Christopher E. Zimmerman, Zimmerman & Zervos, Fairbanks, for appellant Morris.

Ernest D. Faitos, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Melville L. Morris and Charles E. Brown were jointly tried and convicted of various offenses arising from commercial guiding activities involving hunters from Belgium. Morris was convicted of two counts of guiding without a license in violation of AS 08.54.210(a)(3) and one count of unlawfully transferring a harvest ticket in violation of AS 16.05.420(b). Brown was convicted of three counts of guiding without a license, one count of possessing an illegally taken hide in violation of 5 AAC 81.140(b), one count of unlawfully transferring a harvest ticket, and one count of forgery in the third degree in violation of AS 11.46.510. Superior Court Judge Jay Hodges sentenced Morris to serve a total of two years and six months in prison and to pay fines totaling $3,000.[1] Judge Hodges sentenced Brown to serve a total of one year in prison.[2] On

---

1. Morris was sentenced to serve one year for each count of guiding without a license and six months for illegally transferring a harvest ticket. All sentences were imposed consecutively. Morris was also ordered to pay a $1,000 fine for each count.

2. Brown was sentenced to concurrent terms of six months for two counts of guiding without a license and was given a consecutive ninety-day sentence for the third guiding without a license

count. He received thirty days for one count of illegally possessing a bearhide. This sentence was concurrent to the ninety-day sentence for Brown's third count of guiding without a license. Additionally, Brown was sentenced to forty-five days in jail for one count of unlawfully transferring a harvest ticket and forty-five days for forgery. These sentences were made consecutive to the sentences on all of the charges.

appeal, Morris and Brown contend that the trial court erred in denying a motion for mistrial based on prosecutorial misconduct. They also challenge the sufficiency of the evidence at trial and argue that the sentences imposed by Judge Hodges are excessive. We affirm all of the convictions except Brown's conviction for forgery. We remand for additional sentencing proceedings with respect to both Morris and Brown.

## PROSECUTORIAL MISCONDUCT

Morris and Brown argue initially that Judge Hodges abused his discretion in denying the defense motion for a mistrial. The motion was based on the state's cross-examination of Morris. During cross-examination the prosecutor asked Morris about his early retirement from the army and air force exchange program. When Morris indicated that he had retired in 1973, the prosecutor asked:

Q: There was a corruption scandal in the army air force exchange system in 1973, around that year, that got national news coverage. Do you recall that?

Morris' counsel immediately objected. Morris apparently began laughing.

In a hearing outside the jury's presence, the prosecutor admitted that he was "just fishing" and had no information to suggest that Morris was involved in any corruption scandal. Morris then moved for a mistrial. Judge Hodges denied the motion and instructed the jury that "The last question of Mr. Wickwire [the prosecutor] concerning whatever happened in 1973 is stricken. You're also instructed that Mr. Wickwire has absolutely no information that if in fact there was a scandal that Mr. Morris had anything to do with it."

■ The prosecutor's cross-examination of Morris, which was without evidentiary basis and implied prior criminal misconduct on Morris' part, was plainly improper. ABA Standards for Criminal Justice, § 3–5.7(d) (2d ed. 1982), states: "It is unprofessional conduct to ask a question which implies the existence of a factual predicate which the examiner knows he cannot support by evidence." *Cf. Gunnerud v. State,* 611 P.2d 69, 74 (Alaska 1980). However, the decision whether to grant a mistrial is committed to the sound discretion of the trial court; we may reverse that decision only if the court abused its discretion. *Roth v. State,* 626 P.2d 583, 585 (Alaska App.1981). The trial court is vested with broad discretion to determine whether a mistrial should be granted, because that court has the opportunity to hear the tainted evidence as it is presented and to observe the impact it has on the jury. When the court withdraws improper evidence from the jury's consideration and cautions the jury to disregard it, the cautionary instruction is "presumed to cure any error which may have been committed...." *Roth,* 626 P.2d at 585 (quoting *Anderson v. State,* 438 P.2d 228, 232–33 n. 15 (Alaska 1968)).

■ In this case, we conclude that Judge Hodges did not abuse his discretion in denying a mistrial. The prosecution's cross-examination of Morris was on a collateral matter. Judge Hodges immediately gave a curative instruction. That instruction unambiguously told the jury that there was no factual basis for the prosecution's improper question. The question itself, while plainly improper, was hardly inflammatory: Morris had responded to it with laughter. Under the circumstances, we conclude that no error was committed. *See Valentine v. State,* 617 P.2d 751, 754–55 (Alaska 1980); *Amidon v. State,* 565 P.2d 1248, 1261–62 (Alaska 1977).

## SUFFICIENCY OF EVIDENCE

### A. *Forgery: Brown*

■ Brown was convicted of forgery in the third degree, in violation of AS 11.46.-510, for making a false trophy export tag on November 13, 1981. AS 11.46.510 provides, in relevant part:

(a) A person commits the crime of forgery in the third degree if, with intent to defraud, the person

(1) falsely makes, completes, or alters a written instrument....

The state confesses error with respect to Brown's forgery conviction, conceding that the evidence at trial established that "Brown had merely made 'a false statement on a trophy export tag.'" Although the state's confession of error is entitled to great weight, it does not relieve this court of the responsibility to independently review the evidentiary and legal bases for the conviction. *Marks v. State*, 496 P.2d 66, 67 (Alaska 1972).

The export trophy tag that Brown was alleged to have forged was, at the time of the offense, attached to a set of caribou antlers. Morris was transporting the antlers when they were seized. The tag stated that Brown was the taker and shipper of the antlers and that they were being shipped to Morris. The only issue argued at trial was whether the information on the tag was accurate, that is, whether Brown had actually taken the caribou from which the antlers came. It was undisputed, and remains undisputed, that Brown wrote the information on the tag indicating that he had taken the caribou.

■ We agree with the parties that, under these circumstances, the trial court erred in instructing the jury that, to convict Brown of forgery, the state had only to prove that he "falsely made" a written instrument. Under AS 11.46.580(a)(3) to "falsely make" a written instrument, for purposes of Alaska's forgery statute, means:

> to make or draw a complete or incomplete written instrument which purports to be an authentic creation of its ostensible maker, but which is not, either because the ostensible maker is fictitious or because, if real, the ostensible maker did not authorize the making or drawing of the instrument.

Thus, to establish forgery, the state was required to prove not that the information on the tag was false, but rather that the "ostensible maker" of the tag—the person who purportedly wrote the information contained within—was not the person who actually "made" the tag. Under the evidence presented at trial, Brown was clearly the ostensible maker of the tag in this case. He was also the actual maker. Thus, while the information on the tag may have been false, under AS 11.46.580(a)(3), the tag was not "falsely made." Brown's conviction of forgery must be reversed.[3]

## B. Sufficiency of the Evidence on Fish and Game Offenses: Morris and Brown

Both Morris and Brown argued that their guilt was primarily established through accomplice testimony, which was not corroborated. They therefore contend that the evidence was insufficient to support their convictions and the court erred in denying their motions for judgment of acquittal.

■ A motion for judgment of acquittal must be denied unless fairminded jurors would necessarily agree that the state had failed to carry its burden of proof beyond a reasonable doubt. *Gipson v. State*, 609 P.2d 1038, 1040 (Alaska 1980); *Snyder v. State*, 661 P.2d 638, 641 (Alaska App.1983). In determining the propriety of an order denying a motion for judgment of acquittal, this court must construe the evidence and the inferences arising therefrom in the light most favorable to the state. *Davis v. State*, 635 P.2d 481, 483 (Alaska App.1981).

■ In arguing that the evidence at trial was insufficient, Morris and Brown rely on AS 12.45.020, which provides:

> A conviction shall not be had on the testimony of an accomplice unless it is corroborated by other evidence which tends to connect the defendant with the commission of the crime; and the corroboration is not sufficient if it merely shows the commission of the crime or the circumstances of the commission.

This statute recognizes that an accomplice's testimony is potentially suspect, es-

**3.** The offense in this case would apparently have been chargeable under 5 AAC 81.175(f), which provides: "No person may falsify any information required to be set forth on an export shipping tag."

pecially when the accomplice has agreed to testify in exchange for a grant of immunity or, as in this case, for the dismissal of charges. Placing emphasis on the corroboration statute, Morris and Brown assert that specific aspects of various accomplice witnesses' testimony are not corroborated. However, Morris and Brown have simply misinterpreted the scope of the corroboration requirement set forth in AS 12.45.020. In *Oxenberg v. State*, 362 P.2d 893, 896 (Alaska 1961), *cert. denied*, 368 U.S. 56, 82 S.Ct. 189, 7 L.Ed.2d 128 (1961), the Alaska Supreme Court noted that, in determining the sufficiency of corroborating evidence, the evidence need not be considered "by itself and without the aid of the testimony of the accomplice." To meet the statutory requirement, the state must show no more than that the corroborating evidence strengthens or confirms the testimony of the accomplice; it must induce "in the minds of the jurors a rational belief that the accomplice was speaking the truth when he implicated the defendant in the criminal event." *Id.* at 897. There is no requirement that every element of an offense testified to by an accomplice be independently corroborated by other evidence.

Morris and Brown were each charged with multiple counts alleging illegal hunting activities. A sufficient nexus existed among the various counts so that the testimony of accomplice witnesses as to some counts tended to support the testimony of other accomplice witnesses on other counts. Non-accomplice testimony was also relied upon by the state, and this evidence, although not corroborating every aspect of accomplice testimony, certainly lent credence to it. Additionally, a broad range of physical and documentary evidence was presented by the state. This evidence added considerable support to the testimonial evidence against Morris and Brown.

The trial court has considerable latitude, in any case, to determine whether an accomplice's testimony is sufficiently corroborated to warrant submission of the case to the jury. *Miller v. State*, 629 P.2d 546, 549 (Alaska App.1981). Considering the extent of the trial court's discretion, as well as our duty to construe the evidence in the light most favorable to the state, we hold that there was sufficient corroborating evidence to warrant submission of the charges against Morris and Brown to the jury. The trial court did not commit error in denying the motions for judgment of acquittal.

## SENTENCE APPEALS

### A. *Brown's Sentence*

Judge Hodges sentenced Brown to terms totaling one year in jail. Brown argues that the aggregate length of his sentences is excessive. In advancing this argument, Brown points out that he lacks prior criminal involvement. He also emphasizes that the sentences exceed the recommendations of the Alaska Judicial Council. *See* Final Report of the Sentencing Guidelines Committee, Alaska Fish and Game on Sentencing [sic], Alaska Judicial Council (1982) (recommending a sentence of forty-five days and a $1,000 fine for each of the four major game violations, including guiding without a license and illegal transportation of game). We note, initially, that the report of the Sentencing Guidelines Subcommittee has not formally been adopted by the Alaska Judicial Council. Furthermore, as held in *Sandahl v. Anchorage*, 670 P.2d 716, 718 (Alaska App.1983), "[i]t is not the function of appellate review to enforce uniformity in sentencing by requiring similar sentences for the same offense without consideration of each defendant's background." [4]

---

**4.** There is nevertheless cause for at least some concern, as most recently documented by the Alaska Judicial Council in a report entitled Statistical Analysis of Major Fish and Game Offense Sentencing Outcomes (April 1983). That report concluded that the most statistically significant factor in the sentences of fish and game offenders is the identity of the sentencing judge, not the nature of the offense or the defendant's prior record. *See also Graybill v. State*, 672 P.2d 138, 142 n.3 (Alaska App.1983), *petition for hearing granted*, (January 30, 1984).

■ In claiming that his sentence is excessive, Brown also relies strongly on our recent opinion in *Graybill v. State,* 672 P.2d 138 (Alaska App.1983), *petition for hearing granted,* (January 30, 1984). In that case, we held that consecutive sentences totaling seven years' imprisonment with five and one-half years suspended were excessive for fish and game violations, even given Graybill's status as a chronic fish and game violator. In contrast to *Graybill,* however, Brown will face an aggregate term of ten and one-half months' imprisonment after his forgery conviction is vacated. This term is less than the maximum sentence of one year that is applicable to each of his convictions for guiding without a license.[5] Brown was convicted of offenses involving illegal hunting activities that were clearly commercial in nature. His offenses are thus readily distinguishable from *Graybill,* and our decision in that case does not control on the issue of Brown's sentences. Given the nature of Brown's offenses, we are unable to say that the sentences imposed by Judge Hodges are necessarily mistaken.

■ We nevertheless find that Brown's case must be remanded for additional sentencing proceedings. In his sentencing remarks, Judge Hodges addressed himself almost exclusively to Morris' case. The minimal attention given by the sentencing court to Brown's background and conduct renders the court's explanation of Brown's sentence inadequate. From Judge Hodges' sentencing remarks we cannot accurately determine his reasons for concluding that the sentences he imposed on Brown were justified. Given the lack of an appropriate sentencing explanation, we are unable to provide effective appellate review of the sentences. Accordingly, a remand will be necessary to permit the sentencing court to explain Brown's sentence more fully. *See Soroka v. State,* 598 P.2d 69, 71 (Alaska 1979); *Andrews v. State,* 552 P.2d 150,

153–54 (Alaska 1976); *Perrin v. State,* 543 P.2d 413, 418 (Alaska 1975); *Houston v. State,* 648 P.2d 1024, 1027 (Alaska App. 1982).

## B. *Morris' Sentences*

Judge Hodges found Morris to be a worst offender, and sentenced him to maximum sentences for his offenses, and ordered the sentences to run consecutively. Morris' total term of imprisonment is two and one-half years. Morris contends that the prison term he received is excessive.

■ Supporting Judge Hodges' characterization of Morris as a worst offender is evidence establishing that Morris had conducted a continuing, large-scale enterprise involving illegal guiding of foreign hunters for big game in Alaska. Morris' primary motivation in conducting the illegal guiding activities was plainly profit. As in the case with Brown, the commercial nature of Morris' guiding activities distinguishes his case from *Graybill v. State,* 672 P.2d 138 (Alaska App.1983), *petition for hearing granted,* (January 30, 1984). In concluding that Graybill's sentence was excessive, we emphasized the sentencing court's finding that Graybill's offenses were not commercial in nature or motivated by a desire for profit. In this case the record supports the conclusion that Morris was virtually a professional criminal. He relied on his illegal guiding activities as a primary source of income. Judge Hodges did not err in finding that Morris should be classified as a worst offender. As a worst offender, Morris could properly be given a maximum sentence. *State v. Wortham,* 537 P.2d 1117, 1120 (Alaska 1975).

■ Nevertheless, while characterization of Morris as a worst offender may warrant imposition of a maximum sentence for each of his offenses, it does not follow that the sentencing court was automatical-

---

5. The maximum penalty for the offense of guiding without a license is one year in jail, a $1,000 fine, or both. AS 08.54.210(b). The maximum penalty for illegally transferring a harvest ticket is six months' imprisonment, a $1,000 fine, or

both. AS 16.05.430(a). The maximum penalty for illegally possessing or transporting game is also six months' imprisonment, a $1,000 fine, or both. AS 16.05.900(a).

ly justified in requiring the maximum sentences to be served consecutively. The appropriateness of imposing multiple consecutive sentences that exceed the maximum permissible sentence for a single offense must be determined in light of the danger to the community posed by the defendant and the need to isolate the defendant for the protection of the public. Where consecutive sentences exceed the maximum sentence for a single offense, the Alaska Supreme Court has consistently required sentencing judges to make an express finding that the length of the consecutive sentences is necessary for the protection of the public. *See Neal v. State,* 628 P.2d 19, 21 (Alaska 1981); *Mutschler v. State,* 560 P.2d 377, 381 (Alaska 1977); *Cleary v. State,* 548 P.2d 952, 956 (Alaska 1976). *See also Lacquement v. State,* 644 P.2d 856 (Alaska App.1982).

██ In the present case, Judge Hodges found Morris to be a worst offender but did not find that imposition of consecutive sentences was necessary for protection of the public. In certain cases the sentencing record may reveal the danger posed by the defendant's conduct with sufficient clarity to allow an appellate court to conclude, without an express finding by the sentencing court, that consecutive sentences are necessary. *See Neal v. State,* 628 P.2d 19, 21 (Alaska 1981). Having reviewed the record, we conclude that this is not such a case. Accordingly, we must remand for resentencing in Morris' case in order to permit the sentencing court to make an express finding concerning the need for imposition of consecutive sentences.

Brown's conviction of forgery is REVERSED. The convictions of Brown and Morris are otherwise AFFIRMED. The sentences of both Brown and Morris are VACATED and their cases are REMANDED for resentencing in accordance with the views expressed herein.

SINGLETON, Judge, concurring.

I join in Judge Bryner's opinion for the court. I believe, however, that a few additional remarks are needed to clarify our holding in *Lacquement v. State,* 644 P.2d 856 (Alaska App.1982), and the interpretation we have given *Mutschler v. State,* 560 P.2d 377, 381 (Alaska 1977). I note that a substantial number of cases have arisen in which trial courts have apparently misunderstood *Lacquement-Mutschler.* I fear that the following language from the court's opinion in this case will continue that confusion:

> Where consecutive sentences exceed the maximum sentence for a single offense, the Alaska Supreme Court has consistently required sentencing judges to make an express finding that *the length of the consecutive sentences is necessary for the protection of the public.*

*Brown v. State,* 693 P.2d 324, 331 (Alaska App.1984) (emphasis added, citations omitted).

Misunderstanding centers on the meaning of the phrase "the length of the consecutive sentences is necessary for the protection of the public." The majority correctly points out that a finding that a defendant is a worst offender does not, standing alone, establish that his confinement for a period in excess of the maximum term for his most serious offense is "necessary for the protection of the public." *Cf. State v. Wortham,* 537 P.2d 1117, 1120 (Alaska 1975) (defining the "worst offender"). I agree that the appropriate sentence for a "worst offender" in almost every case, including one in which he is simultaneously sentenced for a number of separate crimes, is the maximum sentence for his most serious offense and no more.

I do not believe, however, that the court has set out sufficient guidelines to enable trial courts to identify the truly unusual case when a worst offender convicted of a series of offenses should receive a total sentence in excess of the maximum sentence for his most serious offense. It seems to me that that point is only reached where the trial court determines, based upon substantial evidence in the record, that the defendant cannot be deterred or rehabilitated within the period allowed as a maximum sentence for his most serious

offense. *Larson v. State*, 688 P.2d 592 (Alaska App.1984); *Bolhouse v. State*, 687 P.2d 1166, 1175–76 (Alaska App.1984). In other words, the point is reached only in a case in which the primary *Chaney* sentencing goal is isolation and a period of isolation in excess of the maximum period for the most serious offense is necessary to protect the public. *See State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970). Such a finding is analogous to the determination that a trial court must make before it waives a juvenile offender into superior court for trial, *i.e.*, that the child is not "amenable to treatment" as a juvenile. *See* AS 47.10.060. *See, e.g., State v. F.L.A.*, 608 P.2d 12 (Alaska 1980). The sentencing goals of rehabilitation, deterrence and affirmation of community norms will be satisfied, in all but the most unusual of cases, by a sentence within the guidelines established for the most serious offense. An explicit holding that *Lacquement-Mutschler* requires findings of fact that will justify primary reliance on isolation as a sentencing factor would clear up much of the confusion trial courts and litigants have faced in attempting to interpret our prior decisions.

Morris and Brown were convicted of misdemeanors. Their conduct does not present a substantial risk of physical injury to the persons of others. Nevertheless, as we recognized in *Viveros v. State*, 633 P.2d 289, 291 (Alaska App.1981), a finding of dangerousness necessary to emphasize isolation as the primary sentencing goal does not require a finding that the defendant is violent. Dangerousness, as we use the term, is equated with substantial risk of recidivism. Normally such a finding will be based on a history of repeated criminality. *Id.; see also Leuch v. State*, 633 P.2d 1006, 1010 (Alaska 1981) (first offenders convicted of nonviolent crimes should receive probation in the absence of aggravating circumstances).

In the instant case the trial court properly found that Morris and Brown were engaged in a highly lucrative commercial enterprise in which intentional violations of the fish and game laws played a substantial part in making their enterprise profitable. Under these circumstances Judge Hodges properly found Morris to be a worst offender, but made no factual findings that would justify primary reliance upon isolation as a sentencing factor. Given the lack of explanation for the sentences of Morris and Brown, I join in the majority's decision to remand both cases for resentencing.