**Larry O. LARSON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 6179.**

Court of Appeals of Alaska.

Sept. 14, 1984.

Susan Orlansky, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

Rhonda F. Butterfield, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., SINGLETON, J., and CRANSTON, Superior Court Judge.*

## OPINION

SINGLETON, Judge.

Larry Larson and Richard Buza broke into a home and assaulted and robbed the occupants. As a result, Larson was convicted of burglary in the first degree, AS 11.46.300(a)(1), robbery in the first degree, AS 11.41.500(a)(1), and assault in the second degree, AS 11.41.210(a)(1). Larson's conviction was affirmed in *Larson v. State*, 656 P.2d 571 (Alaska App.1982) (*Larson II*). Larson received consecutive sentences of ten years for the burglary, twenty years for the robbery, and ten years for the

* Cranston, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

assault, for a total sentence of forty years. This forty-year sentence was made consecutive to a previously imposed eight-year sentence for shooting with intent to wound, former AS 11.15.150.[1] Larson appeals his total sentence, contending that it is excessive. Specifically, he argues that the trial court erred (1) in treating him as a third felony offender, (2) in applying the same aggravating factors to increase the presumptive sentence for each offense, and, (3) in imposing sentences that are consecutive both to each other and to the previously imposed eight-year term. We affirm in part and reverse in part. We conclude that Larson should not have been treated as a third felony offender and that the record does not support a sentence of more than forty years' imprisonment. If the same sentences are imposed on remand, they should not be made consecutive to the eight-year sentence previously imposed on Larson. In all other respects we affirm the judgment of the superior court.

## THE OFFENDER

Larry Larson was twenty-eight years of age on July 9, 1980, when the instant offenses were committed. He left school at the age of fifteen, but subsequently acquired his G.E.D. degree; he has taken a number of college courses while incarcerated. Larson is of above-average intelligence and has readily found employment when he sought it. The record reflects that he is a conscientious worker within and outside of prison. He received commendations for his work as a prison cook and prison law librarian. Larson is not suffering from a major mental illness. However, he apparently has an alcohol problem.

Mr. Larson's good qualities, his intelligence and industriousness, are counterbalanced by an extensive criminal record. In 1968, at the age of sixteen, Larson was adjudicated a delinquent based on three incidents, each of which would have been a felony had he been an adult. One of those offenses was the armed robbery of a fifty-four-year-old man who had given Larson and his brother a ride.[2] Larson spent time in juvenile institutions for these offenses.

Four years later, in July of 1972, Larson was sentenced as an adult for an armed robbery of a cab driver under circumstances similar to his juvenile offense. Larson received a five-year suspended imposition of sentence. In August of 1975, shortly before his conviction was set aside for the 1971 robbery, Larson shot and wounded an innocent bystander during a barroom fight. He was convicted of shooting with intent to wound and received an eight-year sentence with no parole eligibility until he served one-third of his sentence. *See Larson I*, 614 P.2d at 777. Larson remained in prison on this charge from December 19, 1975 until June 10, 1980 when he was released on bail pending appeal. As a condition of release, Larson entered the Clitheroe alcohol treatment center. Larson remained at the Clitheroe Center until July 9, 1980, when he was reported AWOL. The instant offenses occurred that night.

## THE OFFENSES

On July 9, 1980, at approximately 3:30 a.m., D.S. and his wife, M.S., had been sleeping when D.S. heard a commotion on the porch and decided to investigate. In the course of his investigation, D.S. opened the door; Larson and Buza accosted him at gunpoint and forced their way into the apartment. It appears that Larson and Buza mistakenly believed that the S. family were cocaine dealers and had a large supply of cocaine or money in the apartment. The S.'s indicated that they had no cocaine. Buza demanded all their money and took

---

**1.** Larson was appealing his conviction for shooting with intent to wound at the time he committed the instant offenses. His conviction was affirmed by the Alaska Supreme Court in *Larson v. State*, 614 P.2d 776 (Alaska 1980) (*Larson I*).

**2.** Larson and his brother persuaded the victim to drive to a remote area. Once the vehicle was stopped, the brothers both pulled out sheath knives, took fifteen dollars from the victim, tied his hands, and blindfolded him. Apparently Larson held a rifle on the victim at some point during the robbery.

the ten dollars that D.S. had. In the meantime Larson led M.S. into the bedroom where he forced her to lay down on her bed and spread her legs. He then jammed the barrel of the rifle up against her anus. M.S. pled with Larson not to assault her as she was hemorrhaging due to having recently given birth to her second child.

D.S. was also forced to lie on the ground with his legs spread apart while he was kicked in the groin several times by Buza. During the course of the burglary/robbery, the victims' puppy was stomped to death. When it became clear that the S.'s had neither cocaine nor additional money, Buza and Larson left. They were almost immediately apprehended and their weapons were found abandoned nearby. *See Larson II*, 656 P.2d at 572–73.

## THE SENTENCE

The trial court made the following findings of fact and entered the following conclusions of law:

The court having considered the evidence and the arguments of counsel makes the following findings of fact:
As to Count I [Burglary]:
1. The defendant has a criminal history consisting of prior convictions for offenses that involved aggravated or repeated instances of assaultive behavior.
2. The conduct constituting the offense was among the most serious conduct included in the definition of the offense.
3. The defendant was on release under AS 12.30.020 or AS 12.30.040 for another felony conviction.
As to Count II [Robbery]:
1. The defendant has a criminal history consisting of prior convictions for offenses that involved aggravated or repeated instances of assaultive behavior.
2. The defendant knew that the offense involved more than one victim.
3. The conduct constituting the offense was among the most serious conduct included in the definition of the offense.
4. The defendant was on release under AS 12.30.020 or AS 12.30.040 for another felony conviction.

As to Count IV [Assault]:
1. The defendant's conduct during the commission of the offense manifested deliberate cruelty to [M.S.].
2. The defendant has a criminal history consisting of prior convictions for offenses that involved aggravated or repeated instances of assaultive behavior.
3. The conduct constituting the offense was among the most serious conduct included in the definition of the offense.
4. The defendant was on release under AS 12.30.020 or AS 12.30.040 for another felony conviction.

Having found the above aggravating factors by clear and convincing evidence and that there are no mitigating factors, this court finds that under the *Chaney* criteria the defendant is not amenable to rehabilitation and should be isolated from society. Further that the sentence imposed must act as a deterrent to others and must serve to reaffirm societal norms.

This court further finds that confinement of the defendant for the aggregate period of incarceration imposed by this court is necessary to protect the public and justifies the imposition of consecutive presumptive terms which result in an aggregate sentence that exceeds the presumptive term for a single count.

This court finds further that the manner in which these crimes were committed and the character and background of the defendant make the defendant a "worst offender".

The trial court then imposed a total sentence of forty years consecutive to the eight-year sentence previously imposed upon Larson for shooting with intent to wound.

## DISCUSSION

### I.

■ Larson complains that he was improperly treated as a third felony offender. He argues that the trial court should not have considered his 1972 armed robbery

conviction as a prior felony. He reasons that Judge Fitzgerald initially entered an order deferring imposition of sentence and placing him on probation for five years, and Judge Moody subsequently set aside the conviction on July 24, 1978. *See* AS 12.55.085(a), (e). Larson first relies on *Sawyer v. State*, 663 P.2d 230 (Alaska App. 1983), in which we held that, in the context of presumptive sentencing, a person has not been convicted of a felony until he has been sentenced for that felony. Larson argues that since he received a suspended imposition of sentence for the 1972 armed robbery, he was never sentenced and consequently never convicted. We rejected this argument in *Shaw v. State*, 673 P.2d 781 (Alaska App.1983), where we said:

> Shaw misconceives the holding of *Sawyer*. When we used the terms "sentence" and "sentencing" in *Sawyer*, we were obviously referring to a disposition hearing during which the trial court reviews the crime and the defendant's participation in it, evaluates the presentence report and selects an appropriate disposition. The hearing preceding the imposition of a suspended sentence clearly qualifies as a disposition hearing. It is therefore a "sentencing" as that term was used in *Sawyer*. Consequently, we conclude that a person who receives a suspended imposition of sentence has been convicted of a felony for purposes of subsequent recidivist proceedings under the presumptive sentencing statutes, at least where the defendant's record has not subsequently been expunged. *Cf. Tuten v. United States*, 460 U.S. 660, [666] 103 S.Ct. 1412, 1416, 75 L.Ed.2d 359, 365 (1983) (drawing distinction between probation and discharge in Federal Youth Corrections Act recidivist proceedings).

673 P.2d at 786.

Alternatively, Larson argues that his conviction was set aside and therefore could not be relied upon in subsequent recidivist proceedings. The trial court reasoned that the purposes underlying the statutes providing a suspended imposition of sentence as a sentencing alternative were intended to reward a defendant who reforms subsequent to his conviction and thereafter leads a blameless life. Expunging the record and setting aside the conviction serves to ensure that a defendant will not be prejudiced in his later law-abiding life by the collateral consequences flowing from a criminal conviction. In the instant case, the trial court apparently reasoned that Larson did not reform during his probationary period following the suspended imposition of sentence for his robbery conviction. In fact, Larson was convicted of a felony charge of shooting with intent to wound in January of 1976, two and one-half years before Judge Moody set aside Larson's robbery conviction. When Judge Moody became aware of this sequence of events for the first time in sentencing Larson for these felonies, he purported to vacate his order setting aside Larson's prior conviction. Judge Moody said that he would not have set aside the conviction had he been aware of the intervening felony conviction. Larson appealed and we reversed the trial court's decision in an unpublished opinion. Essentially, we held:

> [W]e know of no rule which permits a trial court to amend a judgment or order in a manner adverse to a criminal defendant after that order or judgment becomes final. *See Shagloak v. State*, 582 P.2d 1034 (Alaska 1978).

*Larson v. State*, Memorandum Opinion and Judgment No. 240 at 3–4 (Alaska App., December 3, 1982).

However, we also said:

> Nothing in our decision should be construed as deciding the question of whether a defendant is subject to presumptive sentencing where he has previously been convicted of a felony but imposition of sentence was deferred and defendant's record was later expunged. We do not believe that issue properly before us at this time. [*Id.* at 4.]

Although we vacated Judge Moody's order reinstating Larson's 1972 conviction, Judge Moody did consider the conviction as a prior felony in sentencing Larson for the

instant offenses. On appeal, the state concedes error and argues that the trial court should not have considered Larson's robbery conviction as a prior felony. Despite the state's concession of error, we must independently consider the issue. *Marks v. State,* 496 P.2d 66, 67–68 (Alaska 1972). As the state points out, every jurisdiction that has considered the issue has ruled in Larson's favor. *See, e.g., People v. Wunnenberg,* 85 Ill.2d 188, 52 Ill.Dec. 42, 421 N.E.2d 905, 908 (1981); *People v. Calvert,* 100 Ill.App.3d 510, 55 Ill.Dec. 844, 426 N.E.2d 1218 (1981); *Smith v. State,* 50 Md.App. 638, 440 A.2d 406, 408 (1982); *People v. Garcia,* 93 Misc.2d 667, 402 N.Y. S.2d 164 (N.Y.Sup.1978); *Garcia v. State,* 625 S.W.2d 831, 835 (Tex.App.1981). In the absence of some indication in the statute or its legislative history suggesting a contrary result, we agree with the state that we should give our statute a similar interpretation. We therefore hold that a conviction that has been set aside pursuant to AS 12.55.085(e) is not a prior conviction for purposes of presumptive sentencing. *See* AS 12.55.145. Larson should have been treated as a second felony offender.

## II.

Larson argues that the trial court erred in finding the same aggravating factors based on the same evidence for each of his offenses, and then using those factors to justify maximum sentences which were imposed consecutively. We will first address Larson's objections to the specific aggravating factors found by the court. We will then consider Larson's argument that the same factors could not be used to aggravate each of his convictions.

Larson first argues that the trial court erred in finding that he had a criminal history consisting of prior convictions for offenses that involved aggravated or repeated instances of assaultive behavior. *See* AS 12.55.155(c)(8). Although Larson concedes that his shooting with intent to wound conviction qualifies as a prior conviction for assaultive behavior, he reasons that the aggravating factor requires two or

more convictions. Larson admits that he was previously convicted twice of robbery, once as an adult and once as a juvenile. However, he reasons that the adult robbery conviction was set aside and therefore cannot be considered, and that juvenile adjudications do not qualify as convictions.

■ We have previously held that Larson's adult robbery conviction, having been set aside, could not be considered a prior conviction for purposes of triggering presumptive sentencing. However, this conclusion does not preclude using vacated convictions where appropriate to support a finding under AS 12.55.155(c)(8). As originally enacted, that provision established an aggravating factor where "the defendant has a criminal history consisting of prior convictions for offenses, including misdemeanors, that involved aggravated or repeated instances of assaultive behavior." It was subsequently expanded, after Larson committed the offenses at issue, to extend to situations where "the defendant's prior criminal history includes conduct involving aggravated or repeated instances of assaultive behavior." In addition, as Larson points out, the legislature has added an aggravating factor where "the defendant's prior criminal history includes an adjudication as a delinquent for conduct that would have been a felony if committed by an adult." AS 12.55.-155(c)(19).

■ Larson reasons that these amendments to the statute constitute changes that should not be applied retroactively. We need not decide whether aggravating factors may·be given retroactive application, however, because we do not view the legislative change to AS 12.55.155(c)(8) as a new enactment. We are satisfied that it merely clarifies existing law. *See Zurfluh v. State,* 620 P.2d 690, 692–93 (Alaska 1980) (discussing retrospective application of "curative" legislation). As we noted in *Kelly v. State,* 663 P.2d 967, 971 (Alaska App.1983), the word "conviction" may have different meanings depending on the context in which it is used. The legislature's earlier reference to convictions, which in-

cluded misdemeanors, indicates an intent to permit a trial court to aggravate a sentence where a defendant had an established history of assaultive behavior. The requirement of a conviction served to ensure adequate verification of the event. Judge Moody's order setting aside Larson's 1972 robbery conviction did not change the fact that a conviction had taken place or establish that Larson had not previously committed a robbery. Therefore the trial court could properly consider the adult robbery conviction, together with the shooting with intent to wound conviction, as part of a pattern of behavior within the requirements of AS 12.55.155(c)(8). *Cf. Ferreira v. State*, 602 P.2d 803, 805–06 (Alaska 1979) (proper to consider prior burglary despite insanity acquittal in determining chance that present crimes will be repeated, as well as defendant's threat to society and his prospects for rehabilitation).

■ We do not decide whether the prior juvenile adjudications could be used in the same way. *Cf. Davenport v. State*, 543 P.2d 1204, 1211 (Alaska 1975) (trial court sentencing young adult should consider his recent juvenile record in determining the magnitude of his threat to the community and his potential for rehabilitation). Once it was established, however, that Larson had two prior adult convictions making this aggravating factor applicable, the trial court could certainly consider the prior juvenile adjudications in deciding how much weight to give this factor. *See Davenport v. State*, 543 P.2d at 1211. *See also Lee v. State*, 673 P.2d 892, 895 (Alaska App.1983) (prior felony convictions are properly considered in determining appropriate sentence even though they do not meet the statutory requirements for triggering presumptive sentences).

 Larson next argues that the trial court erred in using AS 12.55.155(c)(8), as well as AS 12.55.155(c)(12) (defendant on

release under AS 12.30.020 or AS 12.30.040 for another felony conviction), as a basis for aggravating each of his convictions up to a maximum sentence and then imposing the sentences consecutively. Larson reasons that by proceeding in this way, the trial court, in effect, relied upon these aggravating factors more than once. *See Juneby v. State*, 665 P.2d 30, 34 (Alaska App.1983). The state responds that these and certain other aggravating factors were equally applicable to each of Larson's convictions. Further, the state reasons that any aggravating factor standing alone could warrant a maximum sentence. Because Larson has three convictions and at least three aggravating factors were independently established, the state reasons that the trial court, within its discretion, could impose three maximum sentences. Under the state's analysis, the only limitation on imposing consecutive maximum sentences are the requirements set out in *Lacquement v. State*, 644 P.2d 856, 860–62 (Alaska App.1982) (requiring a specific finding of dangerousness where aggregate sentence exceeds presumptive sentence for most serious offense), and *Mutschler v. State*, 560 P.2d 377, 381 (Alaska 1977) (requiring a specific finding of dangerousness before consecutive sentences may exceed the maximum sentence for one count). Since Larson's past record clearly establishes that he is dangerous and since the trial court made the specific finding required by *Lacquement*, the state concludes that we must affirm the total sentence imposed.

We generally agree with the state's analysis. Each of Larson's offenses viewed in isolation involved conduct which could be considered among the most serious within its class. AS 12.55.155(c)(10). When the additional aggravating factors, applied independently to each offense,[3] are considered, each of Larson's offenses permitted a maximum sentence. We conclude

---

**3.** For example, Larson's conduct manifested deliberate cruelty towards M.S. In *Juneby v. State*, 641 P.2d 823, 840 (Alaska App.1982), *modified on rehearing*, 665 P.2d 30 (Alaska App.1983), we held that a finding of deliberate cruelty required either evidence of torture or gratuitous violence. The latter requirement is met in this case. Larson used "gratuitous violence" on M.S. In addition, Larson was indisputably out on bail at the time he committed these offenses.

that Judge Moody's findings with regard to the aggravating factors were not clearly erroneous.

■ Moreover, Larson clearly meets the supreme court's definition of a worst offender. *See State v. Wortham*, 537 P.2d 1117, 1120 (Alaska 1975) (requiring consideration of prior criminal convictions, age, military records, employment history, drug or alcohol addiction, pre-sentence report evaluations and recommendations, dangerous propensities and possibility of anti-social personalities). A finding that the defendant is a worst offender will warrant imposition of consecutive sentences exceeding the maximum for the single most serious count. Such a finding will not, however, automatically justify maximum consecutive sentences on all counts. The total sentence must still be considered under the guidelines adopted in *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970) (requiring consideration of rehabilitation, deterrence of self and others, isolation and affirmation of community norms). *See also Waters v. State*, 483 P.2d 199 (Alaska 1971). In *Waters*, the supreme court held that an individual sentence, which appears excessive when viewed in isolation, might be appropriate when viewed as a component of a total sentence that includes sentences for other crimes. *Id.* at 201–02. In addition, in *Neal v. State*, 628 P.2d 19, 21 (Alaska 1981), the court stressed that in evaluating the total sentence, the reviewing court must also consider previously imposed sentences that the defendant was obligated to serve, particularly where the current sentence is made consecutive to the portion of those earlier sentences still to be served. Primary consideration must therefore be given to the total sentence imposed. *See also Jacinth v. State*, 593 P.2d 263, 266–67 (Alaska 1979); *Winslow v. State*, 587 P.2d

738, 739 (Alaska 1978); *Salazar v. State*, 562 P.2d 694, 696–97 (Alaska 1977).

Four of the *Chaney* criteria: rehabilitation, individual deterrence, deterrence of others, and affirmation of community norms, will almost always be satisfied by a sentence equal to or less than the maximum sentence for the defendant's most serious offense. A longer composite sentence must rest on the fifth *Chaney* criterion: isolation. As we noted in *Houston v. State*, 648 P.2d 1024, 1027 (Alaska App. 1982):

> Incarceration and isolation are not synonymous. A judge may feel that a period of incarceration is necessary for rehabilitation or deterrence to emphasize to the defendant the seriousness of his offense and the likely consequences of recidivism. However, as a sentencing goal, isolation is reserved for those who can be neither rehabilitated nor deterred; that is, those who are reasonably likely to commit further criminal activity unless incarcerated.

■ Thus, isolation as a predominant sentencing criterion should be reserved for dangerous or habitual criminals who can be neither rehabilitated nor deterred and must therefore be incarcerated for a period in excess of the maximum sentence for the defendant's most serious offense. We noted in *Viveros v. State*, 633 P.2d 289, 291 (Alaska App.1981), that a finding that the defendant is a dangerous or habitual criminal was appropriate where the defendant has two or more felonies within the preceding five years and has previously been incarcerated for one year or longer. Such evidence provides an objective basis for concluding that the defendant is unlikely to be deterred or rehabilitated by a sentence within the range provided for his most serious offense. A finding based on such evidence might satisfy *Lacquement* and *Mutschler*.[4]

**4.** Alaska courts have also approved consecutive sentences for first offenders greater than the maximum sentence for their most serious offense based on a finding of dangerousness where psychiatric testimony or the facts of the case establish that the defendant is suffering severe mental or emotional illness causally re-

lated to his crimes and cure is uncertain. *See, e.g., Burleson v. State*, 543 P.2d 1195, 1201 (Alaska 1975). We do not suggest that a trial court could not make a *Lacquement* or *Mutschler* finding based on other considerations. Since Larson is clearly a habitual offender, it is unnecessary for us to discuss other considerations

■ It is clear that the trial court was justified in designing a sentence for Larson that would reflect the importance of isolating him from society. Larson has a number of convictions for crimes of violence and, disregarding the period of time that he was incarcerated and thus unable to commit crimes, less than five years elapsed between his convictions. He had served substantially more than one year of continuous incarceration prior to committing these crimes. Viewing the totality of the circumstances, the trial court could well conclude that Larson could not be deterred or rehabilitated by a sentence of twenty years or less, the maximum sentence for his most serious offense, and that, consequently, a longer sentence was required. *See Mutschler v. State*, 560 P.2d at 381.

We are also satisfied that *Hintz v. State*, 627 P.2d 207 (Alaska 1981), *Helmer v. State*, 616 P.2d 884 (Alaska 1980), and *Tookak v. State*, 648 P.2d 1018 (Alaska App. 1982), are distinguishable. Hintz, Tookak, and Helmer committed atrocious crimes of violence. However, Helmer was a first offender and Hintz had a criminal record involving primarily property crimes. Tookak had prior misdemeanor convictions for assault and battery and disorderly conduct. Tookak also had two prior felony convictions for grand larceny and burglary. Neither Hintz, Tookak, nor Helmer exhibited the consistent pattern of crimes of violence that Larson does.

■ Larson's situation is more akin to the defendant in *Nix v. State*, 653 P.2d 1093, 1100–01 (Alaska App.1982). Although Nix committed a series of sexual assaults against different victims while Larson committed a single series of crimes against D.S. and M.S., Nix's prior record

which might also warrant a characterization

consisted of property crimes while Larson's prior record involved crimes of violence. We approved a total sentence for Nix of forty years which included consecutive sentences. *Id.* at 1101. Recognizing that Nix and Larson are significantly different in some respects, we nevertheless conclude that their criminal records, interpreted in the light of the conduct for which they were convicted, warrant similar sentences. Larson's total sentence of forty years to serve is not clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

Nevertheless, the sentences imposed for the crimes against D.S. and M.S. should not be made consecutive to Larson's prior conviction for shooting with intent to wound. As we noted in *Nix v. State*, 653 P.2d at 1101, "[t]here is nothing in the record which supports a finding that potential incarceration of forty years would not adequately protect the public."

The judgment of the superior court is AFFIRMED in part and REVERSED in part. The sentence is VACATED and the case REMANDED to the superior court for resentencing. On remand Larson should be sentenced as a second felony offender and his total sentence, including the unserved portion of his previous sentence for shooting with intent to wound, must not exceed forty years.

COATS, J., not participating.