Tommie G. PATTERSON, Appellant,

v.

STATE of Alaska, Appellee.

No. 7096.

Court of Appeals of Alaska.

Oct. 5, 1984.

Linda R. MacLean, Drathman & Weidner, Anchorage, for appellant.

Cynthia M. Hora, Asst. Atty. Gen., and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Tommie G. Patterson was convicted, following a jury trial, of sexual assault in the first degree, kidnapping, three counts of assault in the third degree, and one count of assault in the fourth degree. He received a composite sentence on these convictions of forty-one years. He appeals his convictions and his sentence to this court. We affirm Patterson's conviction but reverse his sentence.

## FACTS

On the evening of December 8, 1981, A.S. and W.W. went to an Anchorage "party house" to listen to some music and have some drinks. While there, W.W. met Tommie Patterson and, later in the evening, asked him for a ride home. Patterson agreed to give a ride to both W.W. and A.S.

Once in the car, W.W. said that she wished she had some cocaine. Patterson said he could get some, and took A.S. and W.W. to a hotel. There they met a woman named Jeri. After snorting cocaine at the hotel, Patterson told A.S. and W.W. that he wanted twenty-five dollars each from them for the drugs. When they told Patterson that they did not have that much money, he said they owed him $500 for "giving him a hassle" about the money. Patterson said he would shoot them if he did not get the money. By that point, A.S. and W.W. were aware that Patterson had a loaded gun in a shoulder holster he was wearing.

Patterson and Jeri took A.S. and W.W. back to the "party house." When Patterson was apparently about to leave the house, he asked W.W. if she would be there when he returned. When she said no, he slapped her. Patterson then left with A.S. and W.W. and drove to his apartment, where they met two other women, Yvette and Pam. Patterson told Yvette that he was going to let her take A.S. and W.W. down to Fourth Avenue, and if they tried to run away to shoot them. While at the apartment, Patterson at one point prepared to leave with A.S. He told Yvette at that time to shoot W.W. if she tried to leave while he was gone.

Patterson and Jeri eventually took both A.S. and W.W. back to the hotel. On the way into the hotel, A.S. was crying. Patterson grabbed what appeared to be a sawed-off pool stick and told A.S. he was going to "kick your ass" if she did not stop crying. Once inside the hotel room, W.W. asked to leave. Patterson had Jeri take her home, but refused to allow A.S. to leave.

Patterson told A.S. to take her clothes off and get into bed. A.S. complied because Patterson was waving the pool cue around and she was afraid she might get hurt. Patterson then forced A.S. to engage in oral and vaginal intercourse. When Jeri returned from taking W.W. home, Patterson had intercourse with both her and A.S. When Jeri left a second time, Patterson again had intercourse with A.S.

Later that evening the police came to the hotel in response to a complaint by W.W. A.S. was found in the hotel room, and related the incident to the police. Patterson was subsequently charged with kidnapping, sexual assault, and several counts of assault.

## CONTINUANCE

Patterson first contends that he was denied the effective assistance of counsel by the trial court's refusal to grant a continuance in order to allow his counsel time to prepare for trial.

While this case was set for trial on March 15, 1982 Patterson moved for a continuance, until April 26, 1982. The basis of the motion was that the public defender agency had to reassign Patterson's case because Patterson had filed two bar grievances against his prior counsel. The sec-

ond public defender assigned to Patterson's case, Michael Wolverton, apparently was returning to the State of Alaska about April 15. After a hearing on the motion, Judge Moody granted the continuance until the week of April 26, 1982, but stated that he was "going to be objecting to any [further] continuances ... regardless of who makes them."

Patterson again moved for a continuance on April 19, 1982, on the basis that he now had funds to obtain private counsel who needed more time to properly prepare for trial. At a hearing before Judge Carlson on April 21, 1982, Mitchel Schapira, Patterson's counsel of choice, stated that his schedule demanded a six-week period for preparation for this case. Judge Carlson denied the motion, stating that "the trial has been set for a date certain, the public is entitled to trial within a reasonable amount of time the same as the defendant is, and ... the defendant ... is adequately represented."

Wolverton, Patterson's public defender, still moved to withdraw as counsel on April 22, 1982. On April 25, 1982, Schapira filed an entry of appearance as Patterson's counsel. On April 26, Judge Moody held a hearing on the motion to withdraw. Schapira said that he felt that he had had adequate time to develop his case, and had no hesitation about his ability to competently represent Patterson.[1] Patterson stated that he was satisfied with Schapira and agreed that Schapira could adequately defend him. Wolverton stated that he had thoroughly briefed Schapira and felt that Schapira had as much knowledge about the case as Wolverton himself did. Judge Moody allowed the public defender to withdraw and Schapira to enter his appearance.

The standard by which we review the denial of a motion to continue was stated in *Nielsen v. State*, 623 P.2d 304, 307 (Alaska 1981):

The decision whether to grant or deny a motion for continuance is committed to the sound discretion of the trial court; reversal is appropriate only upon the showing of an abuse of that discretion ... But, error alone is not enough to require reversal.... It must appear that the refusal of additional time in some manner embarrassed the accused in preparing his defense and prejudiced his rights. [Citations omitted.]

■ Patterson contends that the denial of the motion to continue prejudiced him by denying him effective assistance of counsel. To find ineffective assistance of counsel the court must find that the lawyer did not perform at least as well as a lawyer with ordinary training and skill in the criminal law, conscientiously protecting his client's interests. In addition, to require reversal, there must be a showing that the lack of competency contributed to the conviction. *Risher v. State*, 523 P.2d 421, 424–25 (Alaska 1974).

Patterson does not cite any specific incidents at trial which demonstrate Schapira's ineffective assistance as counsel. We have also independently reviewed the record, and we believe that Patterson was adequately defended by Schapira. In light of our review of the record and in the absence of a showing by Patterson that Schapira's competency fell below that of a skilled criminal lawyer, we find that Patterson has not met the first prong of the *Risher* test.

■ Furthermore, though Schapira apparently only initially appeared as counsel five days prior to this eleven-count felony case, both he and Patterson expressed readiness to go to trial at the April 26 hearing. Schapira was thoroughly questioned by the assistant district attorney concerning his preparation. Schapira said that he had conferred for three hours with the defendant, had read all the police reports and grand jury testimony, and had spoken at length with the public defender.

1. Schapira stated that he was prepared "with one exception." Apparently he was referring to a motion by the state to admit certain evidence of a prior bad act by Patterson. The state filed the motion the morning of trial, April 26, 1982. That evidence was apparently not admitted at trial.

Given the fact that Patterson's counsel conceded that he was ready to go to trial on the scheduled date and the fact that Patterson has not made a showing that he was prejudiced by the short preparation time, Judge Moody did not abuse his discretion in denying Patterson's motion to continue on this ground.

## PROTECTIVE ORDER

On May 4, 1982, the state filed two motions for protective orders that (1) would preclude defense questioning and evidence relating to the alleged victim, A.S., being in the vicinity of certain Fourth Avenue bars other than on December 8 and 9, 1981 and (2) would preclude any further mention that A.S. has a baby.

Judge Moody heard the motions in court on May 4, 1982. He said that he would grant the protective motions to the extent that Patterson's counsel could not mention these matters without making application to the court. Schapira agreed that he would make application to the court before asking such questions.

At the time Judge Moody made his ruling, the parties discussed admissibility of evidence that a witness had seen A.S. at a Fourth Avenue bar on March 13, 1982, more than three months after the incident in question. Defense counsel argued that this evidence was relevant to show that A.S. was lying when she testified that she was afraid of the Fourth Avenue area. The court found that this evidence was not relevant to the occurrences on the night in question, and that defense counsel could show A.S.'s familiarity with the area by showing her presence there on that night. Besides this discussion, Patterson did not make any other application to the court to introduce other evidence regarding A.S.'s past sexual conduct.

Patterson argues that the trial court's grant of the state's protective order and in particular, its exclusion, by virtue of the order, of evidence of A.S.'s acquaintance with known pimps, was an abuse of the trial court's discretion. Patterson further argues that since the trial court's order

seriously curtailed the cross-examination of A.S., he was deprived of his state and federal constitutional right of confrontation.

Alaska Statute 12.45.045(a) specifically addresses the procedure for admission of evidence of past sexual conduct in sexual assault trials. AS 12.45.045(a) states:

*Evidence of past sexual conduct in trials of rape and assault with intent to commit rape.* (a) In prosecutions for the crime of sexual assault in any degree or an attempt to commit sexual assault in any degree, evidence of the complaining witness' previous sexual conduct shall not be admitted nor reference made to it in the presence of the jury except as provided in this section. When the defendant seeks to admit the evidence for any purpose, he may apply for an order of the court at any time before or during the trial or preliminary hearing. After the application is made, the court shall conduct a hearing in camera to determine the admissibility of the evidence. If the court finds that evidence offered by the defendant regarding the sexual conduct of the complaining witness is relevant, and that the probative value of the evidence offered is not outweighed by the probability that its admission will create undue prejudice, confusion of the issues, or unwarranted invasion of the privacy of the complaining witness, the court shall make an order stating what evidence may be introduced and the nature of the questions which shall be permitted. The defendant may then offer evidence under the order of the court.

In this case, the trial court and counsel specifically addressed these rules in arguing about the protective order. Judge Moody repeatedly cautioned Patterson that he needed to bring any witnesses before the court outside the jury's presence before introducing testimony concerning sexual relationships outside the time frame of the charges. Judge Moody's grant of the protective order was specifically premised on Patterson's right to come before the court and show the relevance of such testimony. Therefore, contrary to Patter-

son's argument, the order did not preclude him from offering proof to the court of how A.S.'s acquaintance with known pimps could be relevant to show A.S.'s knowledge of prostitution and its relation to the Fourth Avenue area. Though Patterson argues that the court erred in excluding certain evidence concerning A.S.'s past sexual conduct, the trial court never really made a determination as to any specific evidence since Patterson never made a proper offer of proof as required by AS 12.45.045. *See also* A.R.E. 103(2) (no error where court excludes evidence if no offer of proof). Patterson never sought to call specific witnesses outside the jury's presence nor made any specific application to the court. Since the court was never forced to make a ruling as to Patterson's evidence, he cannot realistically claim error on appeal. *See Moss v. State*, 620 P.2d 674, 677–78 (Alaska 1980). Moreover, since Patterson never properly asked to cross-examine A.S. about past sexual conduct outside the jury's presence pursuant to AS 12.45.045, there was no violation of his right of confrontation. *See Padgett v. State*, 590 P.2d 432, 435 (Alaska 1979) (no error committed where appellant contends that cross-examination of victim was restricted regarding sexual history and relationships in rape case but did not seek closed admissibility hearing pursuant to A.S. 12.45.045).

## SENTENCE

Patterson was convicted on six of the eleven counts with which he was charged. Judge Moody sentenced Patterson as follows: ten years on Count II, sexual assault in the first degree, AS 11.41.410(a)(1); thirty years, consecutive to Count II, on Count III, kidnapping with intent to sexually assault, AS 11.41.300(a)(1)(C); three years each, concurrent with each other and concurrent to Counts II and III, on Counts VIII, IX, and X, assault in the third degree, AS 11.41.220(a); one year, consecutive to the other counts, on Count XI, assault in the fourth degree, AS 11.41.230(a)(1). Patterson's composite sentence equals forty-one years imprisonment. Patterson appeals this sentence arguing that the court did not adequately address rehabilitation in fashioning its sentence.

There is no question that Patterson's crimes and his record justify the imposition of a long sentence and that Judge Moody had every reason to be pessimistic about Patterson's prospects for rehabilitation. Patterson has a substantial record of criminal convictions. Patterson was convicted in Georgia in 1968 for assault with attempt to commit armed robbery and was placed on probation for four years. He was found to have violated his probation in 1971 and was sentenced to fourteen months to serve. In Alaska, aside from numerous traffic violations, he has been convicted of the following offenses since 1977: carrying a concealed weapon, failure to appear for a traffic offense, a weapons violation, leaving the scene of an accident, assault on a police officer, resisting an officer, two incidents of driving with his license suspended, accepting money from a prostitute, assault and battery, and three felony counts of issuing bad checks. At the time of his present offense Patterson was on bail on the felony bad check charges and was on probation on the misdemeanor assault and battery charge. There was also testimony at trial that Patterson offered a cellmate $500 to kill A.S. and W.W., the victims in this case. Patterson has not been employed since 1979, and apparently was employed only sporadically prior to that time. Patterson also has a long and continued history of alcohol and drug abuse. Finally, Patterson was diagnosed as exhibiting antisocial behavior in the presentence psychiatric report.

The facts surrounding Patterson's offenses were also particularly serious. Judge Moody noted in his sentencing remarks that Patterson possessed a gun during the course of the crimes. He also indicated that Patterson's offenses involved manipulating two young women through fear over the course of an evening. A.S. and W.W. were seventeen and twenty, respectively, at the time of these offenses. Given these factors, we conclude that Judge Moody was justified in finding that

Patterson's prospects for rehabilitation were limited and in imposing a lengthy sentence.

■ However, we have compared Patterson's sentence with other sentences involving similar crimes and conclude that Patterson should not receive a sentence in excess of thirty years. The major cases which we have considered in arriving at this result are *Hintz v. State*, 627 P.2d 207, 210–11 (Alaska 1981); *Larson v. State*, 688 P.2d 592 (Alaska App.1984); *Nix v. State*, 653 P.2d 1093, 1100 (Alaska App.1982); and *Tookak v. State*, 648 P.2d 1018, 1023–24 (Alaska App.1982). In *Hintz*, the supreme court disapproved a sentence of life imprisonment for kidnapping which ran consecutive to a twenty-year term for rape and concurrent to two ten-year terms for armed robbery. The supreme court ordered Hintz's sentence reduced to thirty years. Hintz's offense involved kidnapping a woman at gunpoint from a parking lot and taking her outside of town. He raped her, and repeatedly cocked and uncocked the weapon when she hesitated to obey his commands. Hintz then abandoned his victim, who was only partially dressed, in a secluded spot in minus thirteen degree weather. Hintz's offense was a particularly serious offense. However, because Hintz was only twenty-one years old and had only one prior felony conviction and no history of drug abuse, his record is not as serious as Patterson's. Therefore, we could distinguish *Hintz* on that ground.

In *Tookak*, we disapproved a forty-one year sentence for kidnapping, rape, and joyriding. Tookak kidnapped his victim at gunpoint, took her to the woods, raped her and abandoned her. Though we found Tookak to be a worst offender with a long history of offenses, we found the sentence excessive in light of *Hintz*. We held that Tookak's sentence should not exceed thirty years imprisonment. Tookak's offense and prior record appear to be similar to Patterson's.

In *Nix* and *Larson*, we approved sentences of forty years. In both of those cases, however, we declined to approve the imposition of the forty-year sentences to be consecutive to formerly imposed sentences. We indicated that "[t]here is nothing in the record which supports a finding that potential incarceration of forty years would not adequately protect the public." *Nix* at 1101, *Larson* at 600. It appears to us that Patterson's case is more similar to *Tookak*, where we concluded that thirty years was the maximum sentence, than it is to *Larson* and *Nix*. Nix had an extensive juvenile record and had been convicted as an adult of burglary and receiving stolen property. He then was convicted on several separate assault and rape charges. The number of assaults, coupled with Nix's prior record, tends to distinguish that case from Patterson's.

Larson was convicted of burglary in the first degree, assault in the second degree, and robbery in the first degree for breaking into a home at gunpoint and terrorizing the occupants. Larson had previously been convicted of a number of crimes of violence. He had an extensive juvenile record, including a crime which would have been an armed robbery if he were an adult. He had received a suspended imposition of sentence as an adult for armed robbery. He had also formerly been convicted and sentenced to eight years for shooting with intent to wound. At the time of his most recent felony offenses, Larson was on bail pending appeal on the assault with intent to wound charge. *Larson* at 594. We noted that Larson had served substantially more than one year of continuous incarceration prior to committing his most recent set of crimes. *Larson* at 600. Patterson's most recent felony convictions are his bad check charges, property crimes for which he received a total of 210 days of imprisonment. His other convictions involved serving sixty days or less until we go back to 1971, when Patterson's probation for an armed robbery conviction was revoked and he was sentenced to fourteen months. Except for his current offense, Patterson has no record of felonious assaultive conduct since his 1968 assault with intent to commit armed robbery conviction; however, he has

three misdemeanor assault convictions in that time period. He has never served a sentence of over one year in jail. *See Larson* at 594, 600. We conclude that Patterson is more properly classified with Tookak and Hintz than with Nix and Larson. We therefore find Patterson's sentence clearly mistaken and direct the trial court to impose a sentence not to exceed thirty years.

The conviction is AFFIRMED. The sentence is REVERSED and REMANDED.[2]

2. We do not require the court to hold a sentencing hearing to reimpose sentence. *See Tookak v. State,* 680 P.2d 509, 511 (Alaska App.1984).

Of course, the court has discretion to hold another sentencing hearing.